Affirmed and Opinion filed May 25, 2006









Affirmed
and Opinion filed May 25, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00334-CR

____________

 

MARION ROBINSON,
JR.,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 177th
District Court

Harris County, Texas

Trial Court Cause No. 994239

 



 

O P I N I O N

A jury found appellant Marion Robinson,
Jr. guilty of aggravated robbery and assessed a punishment of life imprisonment
in the Texas Department of Criminal JusticeCInstitutional
Division.  In his sole point of error,
appellant contends that the trial court erred in admitting an extraneous
robbery offense.  We affirm.

Background

On Friday, June 18, 2004, complainant
Margaret Meremikwu was robbed at gunpoint in the parking garage of Riverside
Hospital, where she worked as a nurse. 
During the robbery, the perpetrator shot Meremikwu in the face, causing
extensive permanent injuries.

Meremikwu testified that around 6:00 p.m.
on June 18, she drove her maroon van to the bank with fellow nurse Bernadine
Ike to cash their paychecks. 
When she returned to the parking garage, Meremikwu noticed two men on
the sidewalk wearing Ajacketed hood[s]@; Meremikwu
thought this was strange because the coats were thick and it was summer.  According to Meremikwu, the taller man held a
long object in his hand, which Meremikwu soon realized was a gun, while the
shorter man carried a shorter gun. 
Meremikwu testified that she saw the men=s faces when they
approached the passenger=s side of her van.  The men tried to open the van doors, but they
were locked.  Meremikwu testified that
the taller man with the long gun then fired at the rear sliding door, shooting
her in the mouth, face, neck, and shoulder. 
Before she lost consciousness, Meremikwu heard the men demanding: AGive me the money.@  While she was in the hospital, Meremikwu
picked appellant out of a photo spread and also identified him in court as the
shooter.  Although Meremikwu could not
remember whether appellant, who was wearing glasses at trial, was wearing
glasses on June 18, she testified that she was Aa hundred percent@ sure that
appellant was the shooter because she had clearly seen the men=s faces.  On cross-examination, Meremikwu testified
that she had hired a civil attorney and planned to sue the hospital and
possibly appellant for her injuries.








Bernadine Ike, who corroborated Meremikwu=s account of the
robbery, explained that the nurses routinely cashed their paychecks every other
Friday.  Ike testified that as she and
Meremikwu returned from the bank on June 18, she saw two men wearing dark
winter coats with the hoods pulled up. 
Ike also noticed that one man was taller than the other.  Ike testified that as Meremikwu was
repositioning her van in the parking space, the two men rushed up to the
passenger=s side of the vehicle.  According to Ike, each man carried a gun, and
one gun was black.  Ike fell to the floor
of the van when the shot was fired and testified that she did not get a good
look at the men=s faces. 
On cross-examination, Ike testified that the police never asked her to
pick suspects from a photo line-up. 

Jennifer Jones, whose husband was a
patient at the hospital, was parked next to Meremikwu=s van on June
18.  Jones testified that as she was
getting into her car, she heard voices yelling that they would shoot a woman if
she locked the door.  Jones testified
that she saw two men at the van and that the taller man was wielding a long,
exaggerated pistol.   Jones described the
man with the gun as Aa black male with a hood over a shirt@ wearing shorts
and white tennis shoes or socks.  Jones
dropped to the ground when she heard the gunshot and testified on
cross-examination that she was unsure which man fired the gun.  She was also unsure whether one or both men
had worn hoods but stated that they were African-American when defense counsel
asked about their complexions.  Jones
further testified that the police never asked her to pick out suspects from a
lineup or photos and that the hospital was in a high-crime area.

Ellis Henderson, who used to work at the
hospital, was also in the parking garage on June 18.  Henderson testified that he heard a gunshot
and saw two men near a maroon van. 
According to Henderson, the shorter man wore dark shorts and carried a
handgun.  Henderson stated that the
taller man wore a jacket with the hood pulled up and carried an object that
resembled an umbrella or a weapon larger than a handgun.  Henderson testified that he saw the men only Avaguely@ and did not see
their faces.  On cross-examination,
Henderson testified that the shorter man was wearing a dark shirt and shorts
but no hood.  








Patricia Merritt, who also worked at the
hospital, testified that it was common knowledge that the hospital employees
routinely took their paychecks to a nearby bank on paydays.  Merritt testified that on June 18, she was
returning from the bank when she saw two men on the sidewalk.   Merritt thought that the taller man was
carrying an umbrella, but one of the other nurses with Merritt thought the
object was a gun.  Merritt also testified
that the Aumbrella@ had a black
handle like a gun.   Merritt testified
that the taller man wore Aa hooded jacket and shorts.@  Merritt testified that the men pulled the
hoods up and that she did not get a good look at their faces before she heard a
gunshot.  On cross-examination, Merritt
admitted that she could not identify the men=s eye or hair
color or their weight.  She also stated
that the police had never asked her to identify suspects in a line-up or photo
spread and was unsure if one of those men actually had fired the shot.

Appellant=s ex-girlfriend
Tandra Gross, who also worked at the hospital, testified that she received a
phone call from appellant around the time of the shooting.  She also identified appellant as her
ex-boyfriend in a photo array and in court but stated that she had not
witnessed the robbery.  On
cross-examination, Gross testified that she could not say anything bad about
appellant. 

Officer Michael Dunn of the Houston Police
Department, who had secured the crime the scene on June 18, testified that he
had guarded evidence at the scene but had not spoken to any witnesses.  On cross-examination, Dunn acknowledged that
he neither saw nor obtained a description of any possible suspects.  He also testified that he had never met
appellant.  

Officer Jonathan Halliday of the Houston
Police Department testified that he arrived at the scene to protect a jacket
found near the hospital until the Crime Scene Unit could collect it.  On cross-examination, Halliday testified that
he did not know who owned the jacket or who had discarded it.   He also stated that he had not conducted DNA
testing on the jacket.  

Officer Patrick Hernandez of the Houston
Police Department testified that when he arrived at the scene, police had
discovered a shotgun hidden in a tree. 
After securing the surrounding area, Hernandez placed his jacket over
the gun to protect it from the rain and preserve any fingerprints.  On cross-examination, Hernandez testified
that he did not investigate any suspects.








Officer James Kay, a crime scene
investigator for the Houston Police Department, photographed and collected
evidence from the robbery scene, including the jacket and the shotgun found
near the hospital.  Kay also collected a
second sweatshirt, an umbrella, a stocking, and a pair of sunglasses.  He testified that it was very rare to
retrieve identifiable fingerprints.  On
cross-examination, Kay acknowledged that fingerprints were found on the
sunglasses, but he did not know if they matched appellant=s.  He stated that he did not know who the
evidence belonged to or whether the stocking had been used in the robbery to
conceal the perpetrator=s face. 
Kay admitted that officers often find fingerprints that solve crimes and
that he had not seen any suspects in the case. 
On redirect examination, Kay explained the difficulties in obtaining
quality fingerprints, especially from a gun trigger.  On re-cross-examination, Kay testified that
he found nothing at the scene that could have been used to conceal
fingerprints, except perhaps the stocking. 
He stated that a person carrying a gun while fleeing a crime scene could
leave a fingerprint. 

Officer Norman Kiesewetter of the Houston
Police Department inspected Meremikwu=s minivan and
lifted two latent fingerprints.  On
cross-examination, Kiesewetter testified that he did not process the van until
seven days after the robbery and did not know how many people had been in the
van in the interim.  He also did not know
how many suspects were under investigation.

Officer Raphael Saldivar of the Houston
Police Department conducted the fingerprint analysis.  Saldivar testified that the fingerprint found
on the sunglasses did not belong to appellant. 
The fingerprints lifted from the other pieces of evidence were not
identifiable.  On cross-examination,
Saldivar admitted that Aif there was any way . . . to connect
these prints to Mr. Robinson, [he] would have done that.@  He stated that he was one-hundred percent
sure that the fingerprint found on the sunglasses did not belong to
appellant.  Saldivar stated that because
the fingerprints lifted from the van door were not identifiable, they could not
be connected to anyone.  Saldivar
testified that he compared the fingerprints only to appellant=s but explained
that if he had other suspects= fingerprints, he
could attempt to compare them with those found on the evidence.








Darryl Stein, a firearms inspector with
the Houston Police Department, inspected the gun found at the scene.  On cross-examination, Stein confirmed that
the gun was not loaded and admitted that he did not know how long the gun had
been nonoperational. 

Over defense counsel=s objection, and
for the sole purpose of proving identity, the trial court allowed the State to
present evidence that appellant had committed an aggravated robbery two weeks
before Meremikwu was robbed.  Psychiatric
nurse Donna Edwards, who also used to work at Riverside Hospital, testified
that on Friday, June 4, 2004, appellant robbed her in the same area of the
parking garage where Meremikwu was shot. 
Edwards stated that she was leaving the hospital about 11:00 p.m. with a
security guard when she noticed a man following her.  When she turned around, the man pointed a
silver, squarish pistol at her and demanded that she give him her purse.  Edwards testified that the man was wearing a
blue hooded sweatshirt with the hood down, jeans, and a wool cap.  She also stated that she saw the man=s face clearly,
particularly his eyes, and that he was not wearing glasses.  According to Edwards, the man was screaming AWhere is the
money?@ and was waving
the gun in a crazed manner.  Edwards also
stated that when the security guard tried to approach, the man threatened to
shoot him; however, when Edwards gave the man her purse, he grew calm and then
ran down the street.  Edwards identified
appellant in a photo spread and in court as the man who had robbed her that
night and stated that she was positive about her identification.  

Appellant argues that the trial court
erred in admitting evidence of the extraneous offense on the basis of showing
identity because identity was not an issue in the case.  He also argues that the offenses are not
sufficiently similar to constitute Ahandiwork@ and that the
prejudice outweighs the probative value. 

Identity Was An Issue 








Texas Rule of Evidence 404(b) prohibits
the introduction of extraneous bad acts to show character conformity but
provides that such evidence may be admissible to show Amotive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident.@  Tex. R. Evid. 404(b); Page v. State,
137 S.W.3d 75, 78 (Tex. Crim. App. 2004). 
An extraneous offense may be admissible to show identity only when
identity is an issue in the case.  Lane
v. State, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996).  Cross-examination of State=s witnesses can
raise the issue of identity, such as when the identifying witness is impeached
on a material detail of the identification or about the conditions surrounding
the offense charged and the witness=s identification
of the defendant in that situation.  Siqueiros
v. State, 685 S.W.2d 68, 71 (Tex. Crim. App. 1985).  A material detail is one that is Arelevant to the
reliability of the identification.@  Page, 137 S.W.3d. at 79.  That the impeachment was not particularly
damaging or effective in light of all the evidence presented is not the
question; the question is simply whether impeachment occurred that raised the
issue of identity.  Id. 

We review a trial court=s decision to
admit evidence under Rule 404(b) under an abuse of discretion standard.  Prible v. State, 175 S.W.3d 724, 732
(Tex. Crim. App. 2005).  A trial court
abuses its discretion when its decision is so clearly wrong as to lie outside
the zone within which reasonable persons might disagree.  McDonald v. State, 179 S.W.3d  571, 576 (Tex. Crim. App. 2005). 








Appellant first contends that the trial
court erred in admitting Edward=s testimony
because identity was not an issue in the case. 
We disagree.  Defense counsel=s
cross-examination of Merritt, Jones, and Ike revealed that police had never
asked them to look at a line-up or photo spread because they could not provide
detailed information about the two men. 
Additionally, Merritt admitted that she could not identify the men=s eye or hair
color or weight, and neither she nor Jones was sure if one of the men actually
had fired the shot.  Furthermore, while
Henderson testified on cross-examination that the shorter man was not wearing a
hood, Jones was unsure whether one or both men had worn hoods.  She also testified that the hospital was
located in a high-crime area.  Defense
counsel=s
cross-examination of Meremikwu suggests that Meremikwu had an ulterior motive
to positively identify appellant as the perpetrator because she had hired a
civil attorney and was contemplating suing appellant individually.  Finally, the cross-examination testimony of
nearly all of the officers involved in the investigation reveals the lack of
fingerprint or other physical evidence linking appellant to the robbery.

The discrepancies about whether the
perpetrator wore a hood, the eyewitnesses= inability, with
the exception of Meremikwu, to positively identify appellant, the fact that the
hospital was in a high-crime neighborhood, the lack of incriminating physical
evidence, and defense counsel=s attempt to
establish Meremikwu=s ulterior motive to lie illustrate
counsel=s efforts to show
that someone other than appellant could have committed the robbery.  Furthermore, counsel did not offer an
alternative explanation for these lines of questioning, and none is apparent.  See Page, 137 S.W.3d at 78 (stating
that the question of whether cross-examination raised the issue of identity may
best be answered by asking: AIf it was not
about identity, what was it about?@).  In light of these specific facts, we hold
that identity was an issue and limit our holding to appellant=s case.  See id. (noting that cross-examination
suggesting that 265-pound defendant was not victim=s 200-pound
assailant raised issue of identity when counsel offered no alternative reason
for such questioning and simply denied making identity an issue); Lane,
933 S.W.2d 504 at 519 (stating that Athe issue of
identity was also raised by the evidence that the DNA test results could be
interpreted as excluding appellant@); Carter v.
State, 145 S.W.3d 702, 709 (Tex. App.CDallas 2004, pet.
ref=d) (noting that
defense strategy aimed at undermining a witness=s identification
raises the issue of identity).

Offenses Are Sufficiently Similar
To Constitute Appellant=s Handiwork

Appellant also contends that the offenses
are not sufficiently similar to constitute his handiwork.  To be admissible to show identity, an
extraneous offense must also be so similar to the charged offense that the offenses
are marked as the defendant=s handiwork.  Lane, 933 S.W.2d at 519.  Sufficient similarity may be shown by
proximity in time and place or by a common mode of committing the
offenses.  Id.  Appellate courts should consider both the
specific characteristics of the various offenses and the time interval between
them.  Johnson v. State, 68 S.W.3d
644, 651 (Tex. Crim. App. 2002).   








We believe that the two offenses are
sufficiently similar to constitute appellant=s handiwork.  Both Edwards and Meremikwu identified
appellant as the robber.  Although the
robberies occurred at different times of dayCone at 6:00 p.m.
and one at 11:00 p.mCthey occurred on consecutive paydays in
the same area of the parking garage and both victims were nurses who worked at
the hospital.  Furthermore, in both
instances, the robber wore a hooded sweatshirt, wielded a gun, and demanded: AGive me the money@ or AWhere is the
money?@  The fact that the robber may have used
different guns, may not have been wearing glasses, and was alone when he
attacked Edwards but had an accomplice when he attacked Meremikwu do not
necessarily outweigh the similarities between the two offenses.  See Ransom v. State, 503 S.W.2d 810,
813 (Tex. Crim. App. 1974) (commenting that Athe mere fact that
[the accused] was wearing a green sweater and blue jeans and a mustache during
the primary offense and a red sweater and black slacks and had no mustache
during the subsequent extraneous offense cannot be all that important standing
alone@); see also
Thomas v. State, 126 S.W.3d 138, 146 (Tex. App.CHouston [1st
Dist.] 2003, pet. ref=d) (commenting that Athe extraneous
offense and the charged offense . . . can be different offenses, so long as the
similarities . . . are such that the evidence is relevant@ and upholding the
trial court=s admission of an extraneous offense that
occurred eleven months before the charged offense when an intruder used
different methods to break into the victims= homes and
sexually assaulted the first victim but left pornographic photographs on the
second victim=s porch). 
Therefore, because its decision does not lie outside the zone of
reasonable disagreement, the trial court did not abuse its discretion by
admitting the extraneous offense.

Waiver of 403 Argument

Appellant also argues that the trial court
erred because the prejudicial effect of the extraneous offense outweighs its
probative value.  However, appellant has
failed to preserve this issue for appellate review.  According to the Court of Criminal Appeals= decision in Montgomery
v. State, 810 S.W.2d 372, 388 (Tex. Crim. App. 1990):








Once the trial
court rules that the evidence has relevance apart from character conformity,
[it] has ruled on the full extent of the opponent=s objection.  Error is preserved as to whether the evidence
was admissible under Rule 404(b) . . . . 
[A]n objection that proffered evidence amounts to proof of an >extraneous offense= will no longer
suffice, by itself, to invoke a ruling from the trial court whether the
evidence, assuming it has relevance apart from character conformity, is
nevertheless subject to exclusion on the ground of unfair prejudice.  Further objection based on Rule 403 is now
required.

Defense counsel failed to object on Rule 403 grounds,
insisting only that identity was not an issue in appellant=s case.  Accordingly, appellant has waived this
argument.  Tex. R. App. P. 33.1(a)(1)(A).

In conclusion, the trial court did not err
by admitting Edward=s testimony.  Because we hold that the trial court did not
err, we need not address whether appellant was harmed.  We overrule appellant=s sole point of
error and affirm the trial court=s judgment.

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment
rendered and Opinion filed May 25, 2006.

Panel
consists of Chief Justice Hedges and Justices Yates and Guzman.

Do
Not Publish C Tex.
R. App. P. 47.2(b).