**Affirmed and Opinion Filed August 15, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-01125-CR

### COLLIN ROBERT ZACNY, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-80408-15**

## MEMORANDUM OPINION

Before Justices Myers, Stoddart, and Whitehill
Opinion by Justice Whitehill

The sole issue in this case is whether the trial court erred by admitting extraneous offense evidence concerning three area burglaries in appellant's theft of a firearm case. Appellant argues that admitting this evidence was error because (i) the extraneous offenses were not same transaction contextual evidence since full proof of the primary offense could be otherwise given, (ii) the *modus operandi* of the primary offense and the extraneous offenses were not so distinctively similar as to constitute a "signature," and (iii) the extraneous offenses are not sufficiently similar to the primary offense to be used to establish intent.

As discussed below, we conclude that, even if the trial court erroneously admitted the evidence, appellant did not establish resulting harm. We thus affirm the trial court's judgment.

# I. Background

On November 17, 2014, Jared Beesley discovered that someone had broken into his vehicle. The glove box was open and things were in disarray. A .22 caliber Beretta handgun and two cans of ammunition were missing.

Appellant was apprehended two days later when the police were responding to a call about another car break-in at 1:00 a.m. Appellant was in a nearby park, and ran from the police when he saw them. His hand moved backward like he was throwing something. When the police searched that area, they found a black .22 Beretta handgun that Beesley later identified as the one that had been stolen.

Appellant was charged with theft of a firearm, and his case was tried to a jury. Before trial, appellant filed a motion in limine seeking to exclude evidence of three extraneous car burglaries that occurred in the area two days after the Beesley break-in.

During a hearing on the motion, defense counsel argued that the jury should not be allowed to hear evidence that the police were investigating three other burglaries of motor vehicles that occurred in the area because (i) the extraneous offenses did not qualify as same transaction contextual evidence because the offenses did not occur immediately before or after the primary offense, and (ii) the jury did not need to hear about the other burglaries to understand the charged offense.

The prosecutor responded that he only wanted to talk about the burglary that occurred immediately before appellant was apprehended and that officers went to the park by appellant's home because they suspected he was responsible for the burglary. The prosecutor agreed to approach the bench to obtain a ruling on the other two extraneous offenses. The trial court denied the motion in limine and gave appellant a running objection.

All of the extraneous offense evidence was admitted at trial. When the evidence closed, the jury found appellant guilty of theft of a firearm. The trial judge assessed punishment at two years' state jail incarceration, suspended and probated for five years.

## II.  Analysis

### A.  Did the trial court err by admitting the extraneous offense?

Appellant's sole issue complains that the trial court erred in admitting extraneous evidence of three other burglaries that occurred in the area because (i) the offenses were not same transaction contextual evidence since full proof of the primary offense could be given without showing the other offenses, (ii) the *modus operandi* of the primary offense and the extraneous offenses were not so distinctively similar as to constitute a "signature," and (iii) the extraneous offenses are not sufficiently similar to the primary offense as to establish intent.

We review a trial court's decision to admit extraneous offense evidence under an abuse of discretion standard. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). We reverse the trial court's decision only if the ruling is outside the zone of reasonable disagreement. *Ford v. State*, 919 S.W.2d 107, 115 (Tex. Crim. App. 1996).

Admitting extraneous offenses to prove a person's character or to show that the person acted in conformity with that character is prohibited. TEX. R. EVID. 404(b). Evidence of extraneous offenses, however, may be admitted to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.*; *see also Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990). And evidence of extraneous acts may also be admitted to rebut defensive theories. *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996).

But here we need not decide whether the trial court abused its discretion by admitting the extraneous offense evidence because, even assuming error, the record does not establish harm.

**B.      Did admitting the extraneous offense evidence harm appellant?**

The State argues that because *similar* evidence, a fourth extraneous offense about which appellant does not complain, was admitted without objection, we should apply the rule that error is cured when the *same* evidence is admitted without objection. *See Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984). Appellant argues that the harmless error analysis does not apply to improperly admitted extraneous offense evidence. Neither argument is persuasive.

**1.      Harm analysis applies to improperly admitted extraneous offense evidence**.

Appellant relies on *Garza v. State*, 715 S.W.2d 642, 644 (Tex. Crim App. 1986) to argue that:

> Under a harmless error standard of review, the reviewing court looks at the remaining evidence to determine whether the remaining evidence is sufficient to sustain a conviction. **Garza** specifically allows this type of review when reviewing the improper admission of an extraneous offense; and *therefore a harmless error standard of review does not apply* to Mr. Zacny's appeal.

(Italics added). Appellant's reading of *Garza* to conclude that we do not review the erroneous admission of extraneous evidence for harm is misplaced.

Specifically, *Garza* involved a challenge to the sufficiency of the evidence with and without the extraneous evidence. *Id*. Because the court of appeals did not consider the sufficiency of the evidence with the improperly admitted extraneous evidence included, the court of criminal appeals remanded for a sufficiency review. *Id*. There was no discussion or determination of harm. Instead, it is well-established that the improper admission of extraneous evidence is subject to a harm analysis conducted under rule of appellate procedure 44.2(b):

> Any [non-constitutional] error, defect, irregularity, or variance [in a criminal case] that does not affect substantial rights must be disregarded.

TEX. R. APP. P. 44.2(b). *See Carter v. State*, 145 S.W.3d 702, 710 (Tex. App.—Dallas 2004, pet. ref'd) (admission of extraneous evidence subject to rule 44.2(b) harm analysis); *Franklin v.*

–4–

*State,* No. 05-09-00290-CR, 2011 WL 5925143, at *5 (Tex. App.—Dallas Nov. 29, 2011, pet. ref'd) (same).

### 2. Applicable Standards.

Under the harm analysis, "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000); *see also* TEX. R. APP. P. 44.2(b). We should not reverse a conviction for non-constitutional error if, after examining the record as whole, we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State,* 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In making this decision, we consider the entire record, including any testimony and physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005); *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002). The weight of evidence of the defendant's guilt is also relevant in conducting the harm analysis under rule 44.2(b). *Neal v. State*, 256 S.W.3d 264, 285 (Tex. Crim. App. 2008); *Motilla*, 78 S.W.3d at 356–57. And we may consider the closing statements and voir dire, jury instructions, the State's theory, any defensive theories, and whether the State emphasized the alleged error. *Motilla*, 78 S.W.3d at 355–56; *Morales v. State*, 32 S.W.3d at 867.

### 3. Factual Context.

Here, the complained-of evidence includes testimony about three vehicle burglaries that occurred on November 19 (two days after the charged offense) at Brookview Drive, Parkbrook Drive, and Jennifer Lane, all of which are in the same alleyway in the same neighborhood as the charged offense. Because that evidence was introduced along with evidence of the charged

offense and is best understood in sequence, we consider the evidence, extraneous and otherwise, as a whole.

Beesley testified about the burglary of his car on November 17 at his 8820 Woodstream Drive residence in Frisco. He was leaving for work when he noticed that everything inside his Ford Expedition was in disarray, and the glove compartment and center console had been "gone through." His .22 Beretta pistol and two cans of 9 mm ammunition were missing. There were no broken windows or pry marks on the vehicle.

Beesley called the police, and responding officers found one of the ammunition cans behind a nearby tree. There were no smudges on the car, so it appeared that the thief had worn gloves.

Two days later, Mugo Muriithi, who lived a few blocks away from Beesley received a text about a car alarm going off. When he looked outside, he saw someone wearing jeans and a dark hooded sweater by his father's car. Muriithi then notified his father and called the police.

Sergeant Michael Choate responded to Muriithi's call. Choate testified that there had been "quite a few break-ins of vehicles in that area" in previous months. When he inspected Muriithi's father's car, the door and glove compartment were open, and items were "scattered all over the car." Like the Beesley break-in, there were no broken windows or pry marks and nothing of value had been taken. Although the car was checked for fingerprints, it appeared the thief had worn gloves.

While he was taking information for his report, Choate heard that other officers were "contacting" a male in a nearby park, and he relayed to them Muirithi's description of the suspect.

As Choate continued to investigate the surrounding area, he found a white car that had also been broken into. He knew it was a break-in because the inside was in disarray.

Sergeant Ryan Moore was on patrol at 1:00 a.m. on November 19, 2014, when he heard a call concerning a possible burglary in progress at 7711 Brookview Drive. Moore used a map to show this location's proximity to Beesley's address in the same neighborhood. Moore told his officers to look for the firearm that had been reported stolen two days earlier.

The officers near the park considered appellant to be a suspect. So Moore went to a small park between Muriithi's and appellant's houses. After a few minutes, he saw someone wearing a dark hoodie and jeans walk from the direction of Muriithi's house and cross a bridge into the park.

As Moore and another officer approached, another officer drove by. Appellant "took off running at full sprint." He stopped and squatted down, but his left hand moved backward like he was throwing something. Appellant was then detained, and officers found a .22 Beretta handgun when they searched the area appellant had thrown towards. Beesley later identified the gun as the one stolen from his car.

When the police searched appellant, they found a large hunting knife, a pocketknife, a flashlight, and a key to a Dodge vehicle. Appellant told the officers that he was just out for a walk and ran because he was scared after recent burglaries in the area. He also denied throwing the gun and said it was not his. But Moore noted that appellant would not look him in the eye and took a lot of time to think about his answer before responding. The officers retraced appellant's path to the bridge where they had first seen him. Just across the bridge, they found a pile of items on the ground that included a sweatshirt, another knife, a screwdriver, a pair of gloves, and a garage door opener.

The officers then walked the alleyway where Choate was taking the report for the break-in at 7711 Brookview. The officers used the garage door opener they had found, and it opened a garage for a home just behind 7711 Brookview. When the garage door opened, the officers

made contact with the residents and learned that the opener had been taken from one of the residents' cars.

Officer Brent Stafford also responded to the call about the activity in the alleyway at 7711 Brookview. When Stafford arrived, he contacted Choate, who told him about the motor vehicle burglary at that location. So Stafford investigated the alleyway for other potential burglaries. He learned that someone else in the neighborhood had observed a person exiting his driveway at 7612 Jennifer Lane. Stafford went to that address, and observed a gray Dodge Durango parked in a driveway that had signs of a break-in. He made contact with the resident, who owned one of the knives that had been found on appellant.

Two months later, on January 5, 2015, officer David Connelly stopped to investigate a potential car burglary when he saw a cabin light activated. He saw a figure rummaging inside the car, and as he approached, he found appellant hiding next to the car. Appellant was wearing gloves and surrounded by lottery tickets. Connelly asked who the car belonged to, and appellant responded, "I was not in it." Appellant said that he had been collecting the lottery tickets. There were no fingerprints on the car and no signs of forced entry, but it appeared that the glove compartment had been rummaged through and items strewn around. Appellant was arrested for burglary of a motor vehicle. The testimony concerning the January 5 offense was admitted without objection.

Appellant testified in his defense. He said that he goes to the park every day to smoke cigarettes because he cannot smoke in his house. On November 19, he had been smoking in the park for about twenty minutes before he the police apprehended him. He had two knives and a gun with him that night. He carried these items because he had been receiving death threats from neighbors since he was a suspect in various neighborhood car burglaries. He denied seeing any of the objects the police found by the bridge.

Appellant also claimed that he purchased the .22 from a neighbor, Nathan Gates, and that he did not know that it was stolen. He further denied burglarizing any cars on November 17 or 19, and further denied running from the police. He did admit, however, that he had thrown the gun away and lied about possessing it. He also admitted that he committed the January 5 car burglary.

### 4.	Harm Analysis.

We note at the outset that appellant does not identify any specific harm that resulted from admitting the extraneous offense evidence. Viewing the evidence as a whole, we conclude there was no harm.

There was ample evidence that appellant was guilty of the charged theft, and there was little danger that the extraneous evidence would confuse the jury's understanding of that evidence.

In addition to evidence supporting the jury's verdict, the court's charge included an extraneous offense instruction:

> The State has introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case. The evidence was admitted only for the purpose of assisting you, if it does, in determining credibility, motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to rebut a defensive theory. You cannot consider the testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other acts, if any were committed.

We presume that the jury followed this instruction. *See Hutch v. State,* 922 S.W.2d 166, 170 (Tex. Crim. App. 1996).

Both the State and the defense discussed the extraneous offenses in closing argument. But the defense began its argument by reminding the jury that the issue to be determined was theft of a firearm, and warned the jury not to let the extraneous offense evidence distract them.

–9–

The defense also emphasized the extraneous offense instruction in the charge. The majority of the defense's argument, however, was devoted to reasonable doubt about the charged offense.

The State, consistent with the court's instruction, told the jury they could consider the extraneous evidence for a common scheme, plan, or identity, but also emphasized the evidence concerning the charged offense. The State further argued that appellant's testimony was not credible.

Based on our review of the record as a whole, we conclude that any error in admitting the extraneous offense evidence did not have a substantial or injurious effect of the jury's verdict and did not affect appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b).

We thus resolve appellant's sole issue against him, and we affirm the trial court's judgment.

/Bill Whitehill/

BILL WHITEHILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
151125F.U05

–10–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

COLLIN ROBERT ZACNY, Appellant

No. 05-15-01125-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District Court, Collin County, Texas
Trial Court Cause No. 366-80408-15.
Opinion delivered by Justice Whitehill.
Justices Myers and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered August 15, 2016.