**Nicholas Germaine CARTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–02–01873–CR.**

Court of Appeals of Texas, Dallas.

Aug. 24, 2004.

Rehearing Overruled Oct. 14, 2004.

appellate record. *See Rasberry v. State,* 535 S.W.2d 871, 873 (Tex.Crim.App.1976).

John H. Hagler, Dallas, for Appellant.

William T. (Bill) Hill, Jr., Dallas, for State.

Before Justices BRIDGES, FRANCIS and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

A jury found appellant Nicholas Germaine Carter guilty of delivery of four grams or more, but less than 200 grams of cocaine, enhanced by one prior conviction, for which the trial court assessed punishment at imprisonment for seventeen years. Appellant complains on appeal that the evidence is factually insufficient to support his conviction and that the trial court erred when it admitted evidence of an extraneous offense during the guilt/innocence stage of the trial. Because appellant was harmed by the admission of the extraneous offense, we reverse the trial court's judgment and remand for a new trial.

## BACKGROUND

A Dallas undercover police officer working the narcotics division drove his green Mustang to a suspected drug house. Initially, the officer stayed in his car in the driveway and talked to appellant who was standing on the front porch. He told appellant that he was interested in purchasing five pounds of marijuana. They went into the house and appellant told the officer that it "could be done." He asked him to leave his phone number, which the officer did. The officer came within six to seven feet of appellant.

The officer returned to the house on December 31. When he knocked on the front door, a young man instructed him to go around back. The officer knocked on the back door and a different man looked out a window. He told the officer to come over to him. The officer could see the man somewhat, but the curtain partially obstructed his view. The man at the window asked what the officer wanted. The officer, who was less than two feet away from the man, replied that he wanted to buy $220 worth of "solids," which are larger pieces of crack cocaine. The man replied that he only had "quarters," and they began arguing. The officer told the man at the window to go get the guy in front because he knew the officer. The man indicated that he would not need to because he recognized him. Specifically, he said, "I know you—you drive the green Mustang." The officer asked him why he did not call back about the marijuana, and appellant told him he had tried to call him. During this conversation, the officer recognized the man at the window to be appellant.

The young man from the front door stepped up and asked the officer how

much crack he wanted. The officer handed him the $220. Appellant then took the money from the young man and directed him to give the officer the drugs. Appellant also said he would check on the "green," meaning the marijuana. The young man came back to the window and gave the officer several large pieces of crack cocaine. The officer then left. The officer was about one foot away from appellant for roughly two minutes.

The undercover police officer returned to the house approximately two weeks later. He entered the house to get a better layout in order to prepare to execute an arrest and search warrant. The officer had a two-minute conversation with appellant, at which time the officer noticed a tattoo of a Playboy bunny by appellant's right eye. He had not seen it before. The officer, along with several other officers, entered the house a few days later to execute the warrants. Appellant was found in the living room within reach of a double-barrel shotgun. The first police officer to enter the house ordered appellant to get down on the ground. Because appellant refused, the officer took him down with force. Appellant's briefcase was in the bedroom, along with several documents belonging to appellant. The address of the house where the drug-buy occurred was not on any of those documents. The officers found cocaine in a back room and marijuana in the den. A runaway juvenile was also present in the house during the drug-bust.

At trial, the undercover police officer identified appellant as the man from whom he purchased the drugs. He admitted that he did not see the Playboy bunny tattoo on appellant's face until his third trip to the house. He also stated that he had not noticed appellant's gold teeth or another tattoo until trial and he did not make any

notation in his report about appellant's facial hair.

Appellant did not testify at trial, but his girlfriend testified that on the day of the drug sale appellant spent the day at her house with her children. Appellant did not have transportation to leave her house because she had the car. She admitted that she could not say appellant was at her house all day because she was at work from ten in the morning until approximately nine at night. She also acknowledged that she was on probation for securing execution of a document by deception. The girlfriend's teenage daughter testified that appellant spent the day with her and her siblings and that he was never out of her sight except when he went to the bathroom or to the kitchen to get something to eat. She also stated that appellant was still asleep at approximately the same time the drug transaction purportedly occurred.

## EXTRANEOUS OFFENSE

In his second issue, appellant complains that the trial court erred when it admitted evidence that three grams of cocaine were found in a back room of the house at the time appellant was arrested. During cross-examination, defense counsel asked the undercover police officer, "When the arrest was made on the . . . 17th of January, no narcotics were discovered on the person of Mr. Carter." The officer replied, "That is correct." The State argued at a hearing outside the jury's presence that, by the question, appellant had opened the door to admit evidence that cocaine was found in plain view on top of a refrigerator in a back room of the house. Appellant made a rule 404 objection, contending that the cocaine could not be legally deemed to be under appellant's "care, custody or control" because nothing established that he lived there, and documents bearing his

name that were found in another room of the house identified a different address for him. The State responded that because the defense could argue that no drugs were found in appellant's possession, the State should be able to argue that although the drugs were not in his possession, they were within his care, custody, and control, which was "a matter of weight for the jury to decide." The court agreed, stating that the presence of the cocaine was "res gestae of the offense." Accordingly, the judge allowed the evidence to be presented to the jury. Appellant did not make a rule 403 objection that the evidence should be excluded because its probative value was substantially outweighed by the danger of unfair prejudice. *See* TEX.R. EVID. 403.

■ Evidence of extraneous offenses is generally not admissible. TEX.R. EVID. 404(a). However, rule 404(b) allows evidence of other crimes, wrongs, or acts if the evidence has relevance apart from character conformity. TEX.R. EVID. 404(b). Evidence of other crimes, wrongs, or acts may be admissible to prove identity or intent, to establish motive, or to show opportunity or preparation. *Id.; Moses v. State,* 105 S.W.3d 622, 626 (Tex. Crim.App.2003). This is only true, however, when the evidence is shown to be material and relevant to a contested issue in the case. *Abdnor v. State,* 871 S.W.2d 726, 738 (Tex.Crim.App.1994). "Same transaction contextual evidence is admissible as an exception under Rule 404(b) where such evidence is necessary to the jury's understanding of the instant offense...." *Rogers v. State,* 853 S.W.2d 29, 33 (Tex.Crim.App.1993).[1] And "otherwise inadmissible evidence may be admitted if the party against whom the evidence is offered 'opens the door.'" *Schutz v. State,* 957 S.W.2d 52, 71 (Tex.Crim.App.1997).

■ We review rulings on the admissibility of evidence under an abuse of discretion standard. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App.2000). The trial court will not be overturned as long as its ruling is within the zone of reasonable disagreement. *Id.* If the trial court's evidentiary ruling is reasonably supported by the record and is correct under any applicable theory of law, we must uphold it. *Trevino v. State,* 991 S.W.2d 849, 855 (Tex.Crim.App.1999). This is true even when the trial court gives the wrong reason for its decision. *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim. App.1990).

### Same Transaction Contextual Evidence

■ We agree with appellant that the admission of evidence and testimony that cocaine was seized in the house where appellant was arrested on January 17 was not same transaction contextual evidence of the December 31 cocaine sale. Same transaction contextual evidence conveys to the trier of fact information essential to understanding the context and circumstances of events which, even though they involve legally separate offenses, are blended together and interwoven. *Camacho v. State,* 864 S.W.2d 524, 532 (Tex. Crim.App.1993). "Only if the facts and circumstances of the instant offense would make little or no sense without also bringing in the same transaction contextual evidence, should the same transaction contextual evidence be admitted." *Rogers,* 853 S.W.2d at 33. In this case, the jury's understanding of the charged offense

---

1. "Res gestae" was a term previously used to describe background evidence. *Mayes v. State,* 816 S.W.2d 79, 86–87 (Tex.Crim.App. 1991). Background evidence is now referred to as either same transaction contextual evidence or background contextual evidence. *Id.*

would not have been impaired or clouded had the State described appellant's later arrest without including the evidence that cocaine was found in the house when appellant was arrested.

### Opening the Door

■ Otherwise inadmissible evidence may be admitted if the party against whom the evidence is offered "opens the door." *Schutz*, 957 S.W.2d at 71. But the party offering the evidence may not stray beyond the scope of the invitation. *Id.* Appellant's counsel asked the officer to confirm that no narcotics were discovered "on the person of" appellant at the time of the arrest. The question did not "open the door" to allowing testimony that cocaine was found in a different room than the room in which appellant was arrested, in a house that was not proven to belong to appellant, and where another person was present, and others had been present, every time the officer had been there. Consequently, the evidence strayed "beyond the scope of the invitation."

### Intent or Knowledge

The State contends on appeal that the evidence was admissible to establish identity. However, the evidence was not admitted or considered for that purpose at trial. The jury instructions provided:

> You are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such offenses, if any were committed. And even then you may only consider the same in determining the intent of the defendant and knowledge of the defen-

dant, if any, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

In addition to the jury instructions, the State argued to the jury "that for you to consider [the extraneous offense] in any way as to the defendant's intent or knowledge, you first of all have to believe that he's in possession of [the cocaine]."

■ Extraneous offense evidence is relevant if it logically makes elemental facts, such as intent or knowledge, more or less probable, or if it makes the defense's evidence, attempting to undermine these elemental facts, more or less probable. *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex.Crim.App.1991) (op. on reh'g). Evidence of extraneous offenses may be admissible to prove scienter, but only where intent or guilty knowledge is an essential element of the State's case and cannot be inferred from the act itself. *Prior v. State*, 647 S.W.2d 956, 959 (Tex.Crim.App.1983). In this case, appellant's defense was that he was wrongly identified, that he did not commit the offense, and that he was somewhere else when the drug sale took place. He did not argue that he sold the cocaine but did not know it was cocaine or that he did not intend to sell it. Consequently, the extraneous offense—the fact that cocaine was found in a different room of the house from the one in which he was arrested and on a different occasion from the time he was seen actually selling cocaine—does not tend to make the existence of a material fact in this case, that is whether he sold the cocaine on December 31, more or less probable. *See Rankin v. State*, 974 S.W.2d 707, 719 (Tex.Crim.App.1998) (op. on reh'g) (holding that when State's direct evidence clearly showed intent and was uncontradicted by defendant, offer of other crimes is unjustified due to lack of relevance);

*Owens v. State,* 827 S.W.2d 911, 916 (Tex. Crim.App.1992) (holding that extraneous offense evidence was inadmissible where only fact to be resolved was whether criminal offense occurred as alleged); *Montgomery,* 810 S.W.2d at 397 (holding that admission of extraneous acts was abuse of discretion where State had no compelling need for evidence to prove intent).

The dissent states that "the trial court could have reasonably determined that appellant's subsequent act of being in the house with cocaine in the back room and a shotgun nearby tended to make more probable the allegation that appellant intended to deliver the cocaine in the charged offense." However, the cited cases involved situations in which there was conflicting evidence on the specific issue of intent, not merely where intent was an element of the crime. *See Rubio v. State,* 607 S.W.2d 498, 501 (Tex.Crim.App. 1980) (holding that when intent is placed in issue, the State may offer extraneous offenses relevant to that contested issue). In this case, the extraneous offense evidence was not properly admitted to prove intent or knowledge.

**Identity**

 We agree that an extraneous offense may be admissible to show identity when identity is an issue in the case. *Lane v. State,* 933 S.W.2d 504, 519 (Tex. Crim.App.1996). The dissent, citing *Siqueiros v. State,* 685 S.W.2d 68, 71 (Tex. Crim.App.1985), states that "[w]hen the State's only identifying witness is impeached on cross-examination, raising the issue of identity, the extraneous offense becomes admissible." However, we read *Siqueiros* differently. The court in *Si-*

*queiros* held that an extraneous offense is admissible to prove identity when the following two factors are present: (1) identity is a contested issue in the case; and (2) something unique exists that connects the extraneous offense to the charged offense—"some distinguishing characteristic common to both the extraneous offense and the offense charged." *Id.* In other words, there is a two-part test for determining when an extraneous offense is admissible for proof of identity. Thus, an extraneous offense does not become admissible simply because an eyewitness is impeached on cross-examination about the identity of the perpetrator. Impeachment is simply one way that identity may become an issue.[2] A defense strategy aimed at undermining the witness's identification, such as occurred in this case, also raises the issue of identity. *Id.* Consequently, although we agree with the dissent that identity is an issue in this case, we do not agree that it is the only factor in determining whether an extraneous offense is admissible. If there was no second part to the test, extraneous offenses, no matter how unrelated or dissimilar, would generally be admitted if *any* question was raised about the identity of the defendant.

 In this case, the connection was not even as strong as the cases cited in the dissent because the extraneous offense here was completely different from the charged offense. At the time of his arrest, appellant was present in a house where cocaine was found in the same room from which it had been previously sold. That is quite a bit different from the act of selling cocaine out of the back window of that house, which is the offense appellant was

2. The police officer never wavered in his testimony that appellant was the person who sold him the drugs. He was cross-examined, however, which highlighted the defense's position that perhaps the officer did not get as good a look at the drug dealer as he thought. But even if the officer was impeached, the extraneous offense would not have satisfied the second prong of admissibility.

charged with committing. Additionally, someone else was in the house, appellant was not proven to own the house, and other people were always in the house on the previous occasions when the officer was there. We should not engraft exceptions to rule 404 that would allow extraneous offenses to be admitted when identity is an issue absent a distinct connection between the charged and the extraneous offenses. As a result, the evidence was not properly admitted under rule 404(b) to prove identity and only served to allow the jury the opportunity to convict appellant based on character conformity.

## Conclusion

The cocaine found on the day of the arrest did not serve to make a fact of consequence more or less probable. It simply showed that cocaine was discovered somewhere on the premises where appellant was arrested. *See Alexander v. State*, 88 S.W.3d 772, 777–78 (Tex.App.-Corpus Christi 2002, pet. ref'd) (holding that presence of revolver in residence where appellant was arrested was not relevant to any fact of consequence and was thus erroneously admitted). We conclude the trial court erred, therefore, when it admitted evidence of the cocaine at trial.

## HARM ANALYSIS

 Having determined that the evidence was erroneously admitted, we must now decide whether the admission of this evidence was so harmful as to require a new trial. The introduction of extraneous offenses to the jury is inherently prejudicial and harms the defendant because it requires the defendant to defend against not only the offense charged, but also his uncharged actions. *Abdnor*, 871 S.W.2d at 738. The admission of the extraneous offense also prejudices the defendant because of the jury's natural inclination to infer guilt of the charged offense from the extraneous offenses. *Id.* Here, the complained-of error is not of constitutional dimension. *See DeLeon v. State*, 77 S.W.3d 300, 316 (Tex.App.-Austin 2001, pet. ref'd). We must, therefore, disregard the error if it did not affect an appellant's substantial rights. *See* Tex.R.App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.App.1997). However, "[a] criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Morales v. State*, 32 S.W.3d 862, 867 (Tex.Crim.App.2000). If one cannot say with fair assurance that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. *Fowler v. State*, 958 S.W.2d 853, 865 (Tex. App.-Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex.Crim.App.1999) (citing *Kotteakos v. U.S.*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). The inquiry cannot be merely whether there was enough evidence to support the result, apart from the phase affected by the error. *Id.* It is, rather, whether the error itself had substantial influence. *Id.* If so, or if one is left in grave doubt, the conviction cannot stand. *Id.* "The very process of reaching this decision is the performance of a Rule 44.2(b) harm analysis." *Llamas v. State*, 12 S.W.3d 469, 471 n. 2 (Tex.Crim.App. 2000).

 In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the

nature of the evidence supporting the verdict, the character of the alleged error, and how the evidence might be considered in connection with other evidence in the case. *Morales,* 32 S.W.3d at 867. The reviewing court might also consider the jury instructions given by the trial judge, the State's theory, any defensive theories, and closing arguments. *Id.*

### Discussion

█ In determining the magnitude of the harm resulting from the erroneous admission of the complained-of evidence, we have examined, reviewed, and considered the whole record. The testimony regarding the presence of three grams of cocaine in the house where the original drug sale occurred was highly prejudicial because it involved the same drug and implied to the jury that appellant was selling drugs at the house on the day of the arrest, although there was no such evidence. The undercover officer testified that he believed appellant was in "possession" of the cocaine. During jury argument, the prosecutor asked the jurors to consider this evidence in resolving the issue of appellant's guilt. Specifically, she argued as follows:

> And why is he in possession of that cocaine? Well, there's only two people in here, just like every other time we see this defendant. There's only two people here. One's him, and one's the juvenile. He is in possession of that house. And what's in that house in open view back here? I mean, he's here basically right next to the double barrel shotgun. Back here you've got that cocaine in open or plain view right in back here, right in back there where we know he was on the 31st of December. And you remember his statement, "We just have quarters." Look at what we have here. Some tens, some all the way up to 30's, including quarters. He's in possession of that. In response to what Ms. Lollar

brought out, well, did he have drugs on him? No, he didn't. But he's in possession of what's right here.... [R]ealize that on this day, the defendant is here right next to this gun with cocaine in the back where the delivery happened. I ask you to return a verdict of guilty based on the credible, believable evidence.

During deliberations, the jury asked the court to allow it to hear the "verbal exchange between the officer and defendant that lead[sic] the officer to state that he could identify the defendant through the back window." The jury had difficulty reaching a verdict, as evidenced by the presiding juror's note that "the jury is deadlocked." The jury finally reached a verdict after the court sent it instructions to continue deliberating. After reviewing the record, we have grave doubts about whether the jury was induced to convict by the "character conformity" evidence. We cannot say that we have fair assurance that the error did not influence the jury, or had but a slight effect on the jury's verdict. *Morales,* 32 S.W.3d at 867. We sustain issue two.

Because we conclude issue two is dispositive of the appeal, we do not reach issue one. We reverse the trial court's judgment and remand for a new trial.

BRIDGES, J., dissenting.

BRIDGES, Justice, dissenting.

I respectfully dissent. Because I conclude the evidence that cocaine was recovered from the house in which appellant was arrested was properly admitted to show appellant's knowledge and intent, I would affirm the trial court's judgment.

As discussed by the majority, the record in this case shows that Robert S., an undercover narcotics officer, went to a known drug house in south Dallas on December

18, 2001. Robert spoke with appellant about purchasing some marijuana. Appellant indicated that could be done, and he led Robert inside the house and told Robert to leave his telephone number. Robert left his name and number and left the house. On December 31, 2001, Robert returned to the house with his partner, also an undercover narcotics officer. Robert knocked on the front door of the house while his partner stayed in the car. A black male moved a curtain to the side and told Robert to go around back. Robert went to the back of the house and knocked on the back door in an attempt to get inside the house once again. Appellant partially opened a window and called Robert over. Robert gave appellant $220 in exchange for several large pieces of loose crack cocaine. Robert did not immediately arrest appellant because there were three other locations from which crack was being sold on appellant's street, and Robert intended to come back at a later date and "hit" all four locations at the same time.

On January 14, 2002, Robert returned to the house where he had purchased drugs from appellant in an effort to get more information to allow him to execute a search warrant on the house. Robert spoke with appellant for approximately three minutes and noticed appellant had a tattoo by his right eye. On January 17, 2002, Robert executed a search warrant on appellant's house. Dallas police sergeant David Nofzinger, who assisted in executing the warrant, confronted appellant, who was standing in front of a couch. Directly to appellant's right was a double-barreled shotgun leaning against the wall. Appellant ignored Nofzinger's instruction to get down, and Nofzinger threw appellant to the floor. Appellant was arrested in the living room, and police found in the front bedroom a Verizon wireless bill and a receipt for the purchase of a car belonging to appellant. In the back room, police found

three grams of cocaine in the form of loose rocks arranged in a row inside a metal pan sitting on a waist-high freezer. In the den area, a small amount of marijuana was sitting on a table. The only other person present in the house was a juvenile female, and police took her into custody as a runaway. That same day, other warrants were executed on appellant's street.

At appellant's trial, the court admitted the evidence of the three grams of cocaine, marijuana, and shotgun that were in the house when appellant was arrested. Appellant did not object to the admission of the shotgun. Appellant complains only of the admission of the three grams of cocaine. The trial court's decision to admit or exclude evidence will be upheld on appeal absent an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim.App.1991) (op. on reh'g). That is to say, as long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not intercede. *Id.* Whether objected-to evidence of "other crimes, wrongs, or acts" has relevance apart from character conformity, as required by rule of evidence 404(b), is also a question for the trial court. *Id.* The trial court must conclude that the evidence tends in logic and common experience to serve some purpose other than character conformity to make the existence of a fact of consequence more or less probable than it would be without the evidence. *Id.* An appellate court owes no less deference to the trial judge in making this judgment than it affords him in making any other relevancy call. *Id.*

Here, the record shows that, on three occasions before executing the search warrant, Robert visited the house where appellant had sold drugs. Robert purchased loose rocks of cocaine from appellant at the back window of the house, and Robert visited and spoke with appellant at the

house three days before executing the search warrant. Although the State did not prove that appellant actually owned the house, Robert testified he had never encountered a drug dealer who had the house deeded to him. In fact, appellant was present at the house every time Robert stopped by between December 18, 2001, and January 17, 2002. Further, appellant's cellular telephone bill and the receipt for a car purchase were in the front bedroom. At the time appellant was arrested, a shotgun was leaning against the wall next to appellant, and cocaine was found in plain view in the back room. Robert had previously purchased cocaine from the back room.

Nevertheless, appellant's theory of the case was that he was not present on December 31, 2001, when Robert purchased cocaine at the same house in which appellant was arrested. An extraneous offense may be admissible to show identity only when identity is an issue in the case. *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim.App.1996). When the State's only identifying witness is impeached on cross-examination, raising the issue of identity, the extraneous offense becomes admissible. *Siqueiros v. State*, 685 S.W.2d 68, 71 (Tex.Crim.App.1985). The identification of a defendant can be impeached by cross-examination of the witness about, among other things, an earlier misidentification of the defendant. *Id.; see Gillon v. State*, 492 S.W.2d 948, 948–49 (Tex.Crim.App. 1973).

Here, during the State's case-in-chief, appellant's counsel cross-examined Robert concerning his description of appellant and his identification of appellant as the person Robert spoke with on December 18. Robert testified he could not recall the clothes appellant was wearing, and Robert had no description written in his notes. Robert testified that, during the encounter on De-

cember 31, the black male who moved the curtain and told Robert to go to the back of the house was "the twin." Robert's report on the December 31 encounter did not mention the tattoo by appellant's right eye or gold teeth. Robert testified he did not see appellant's tattoo until January 14. Appellant's counsel questioned Robert about whether the tattoo Robert did not recognize until January 14 was "the connecting link" back to the encounter on December 31. Robert testified that "all the circumstances all put together" helped him identify appellant.

I would conclude that the cross-examination of Robert was sufficient to make identity an issue in the case. *See Lane*, 933 S.W.2d at 519; *Siqueiros*, 685 S.W.2d at 71. Further, because appellant's theory of the case was that he was not the person who sold Robert drugs, evidence affirmatively linking appellant to the house and its contents and the previous drug sale was relevant because it contradicted appellant's theory that he had been misidentified as the person who sold the drugs. *See Johnigan v. State*, 69 S.W.3d 749, 755–56 (Tex. App.-Tyler 2002, pet. ref'd) (guns, cocaine-based drugs, bullets, appellant's driver's license and papers seized in search of appellant's house twenty-six hours after sale of cocaine relevant to contradict appellant's contention he was misidentified). I would reach this conclusion despite the fact that the State did not prove who actually owned the house in which appellant was arrested, and the cocaine was in the back room of the house, not the living room where appellant was discovered.

The majority cites *Alexander v. State*, 88 S.W.3d 772 (Tex.App.-Corpus Christi 2002, pet. ref'd), for the proposition that the cocaine found on the day of the arrest did not serve to make a fact of consequence more or less probable. In *Alexander*, the court concluded a revolver found

in the residence where appellant was arrested was not relevant to any fact of consequence and was, therefore, erroneously admitted. *Alexander*, 88 S.W.3d at 777–78. Alexander was arrested at "a residence" in Bryan, Texas, approximately three weeks after he used a rifle to shoot a man in Dallas. The *Alexander* court stated there was no showing that the residence belonged to Alexander nor any evidence as to where the revolver was located in the residence. *Id.* at 777. Thus, *Alexander* addressed the relevance of a handgun that was (1) not used in the commission of the charged offense, (2) not per se illegal, and (3) not found at or near the scene of the charged offense. However, in this case, the cocaine found on the day of the arrest was the same substance sold in the charged offense, was illegal, and was found at the scene of the previous sale with which appellant was charged. Under these circumstances, I would conclude *Alexander* does not support the exclusion of the cocaine found on the day of appellant's arrest.

In addition, the record shows the trial court admitted the evidence of the extraneous offense and charged the jury that it was to consider the evidence only in determining appellant's intent and knowledge. Because the indictment alleged appellant "intentionally and knowingly" delivered cocaine, appellant's intent and knowledge became elements the State was required to prove beyond a reasonable doubt. *See Morgan v. State*, 692 S.W.2d 877, 880 (Tex. Crim.App.1985); *Powell v. State*, 5 S.W.3d 369, 383 (Tex.App.-Texarkana 1999, pet. ref'd). I would conclude the trial court could have reasonably determined appellant's subsequent act of being in the house with cocaine in the back room and a shotgun nearby tended to make more probable the allegation that appellant intended to deliver the cocaine in the charged offense. *See Powell*, 5 S.W.3d at 383 (subsequent extraneous drug possession offense tended to make more probable allegation that appellant intended to deliver drugs in charged offense); *Mason v. State*, 99 S.W.3d 652, 656 (Tex.App.-Eastland 2003, no pet.) (no abuse of discretion to admit evidence of extraneous drug transactions in 2001 as circumstantial evidence of appellant's knowing possession of cocaine in 1999). The fact that appellant's extraneous conduct occurred after the acts constituting the offense on trial does not render the evidence inadmissible under rule 404(b). *Powell*, 5 S.W.3d 369, 383. Under the facts and circumstances of this case, I would conclude the trial court did not abuse its discretion in admitting the evidence of the drugs and shotgun present at the house at the time of appellant's arrest. *See Montgomery*, 810 S.W.2d at 391; *Powell*, 5 S.W.3d at 383. Therefore, I would resolve appellant's second issue against him.

Accordingly, I would affirm the trial court's judgment.