COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                                 NO.
2-05-235-CR

 

 

KATHERINE RENEE MALONE                                                           APPELLANT

 

 

                                                             V.

 

 

THE STATE OF TEXAS                                                                             STATE

 

 

                                                       ------------

 

               FROM THE 367TH
DISTRICT COURT OF DENTON COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

 

I.  Introduction








Appellant Katherine Renee Malone appeals her conviction and
seven-year sentence for possession of a controlled substance with intent to
deliver.  In her first two issues,
appellant contends that the evidence is legally and factually insufficient to
support her conviction.  In appellant=s third and fourth
issues, she contends that the trial court abused its discretion by allowing
Ermino Amaya and Aaron Fuoco to testify regarding an extraneous offense during
the guilt-innocence phase in violation of rule 403 and 404(b) and that the
testimony was not sufficiently corroborated under the accomplice-witness
rule.  We affirm.

II.  Background Facts








On April 12, 2004, Detective Jeff Davis, a Denton police
officer in the narcotics division, arrested Amaya for possession of marijuana
and firearms by a felon.  After being
arrested, Amaya gave Detective Davis appellant=s and Jeff Barton=s (J.B.) names and
told Detective Davis that these are people from whom he could purchase
drugs.  Detective Davis told Amaya to
make some phone calls to appellant and J.B. to see if it would be possible to
buy drugs from them and then to report back to Detective Davis.  On April 25, 2004, Amaya called and told
Detective Davis that he (Amaya) had a Apretty firm plan@ and that he could
probably arrange for the drug buy to happen the next day.  Detective Davis then told Amaya to call him
in the morning, and they would meet at a location and make a recorded phone
call to appellant and J.B. regarding the drug transaction.  On April 26, 2004, Detective Davis met Amaya
at a car wash, and Amaya made a call to appellant and J.B. that was recorded on
a digital recorder.  When Amaya called
appellant and J.B., they were with Fuoco, the supplier of the drugs, at a
mechanic=s shop where the
drug buy was supposed to occur.  In one
of the recorded phone calls, Detective Davis heard appellant give Amaya
directions to the mechanic=s shop.  After listening to the phone calls, Detective
Davis called the officers that had set up surveillance at the mechanic=s shop and told
them to arrest appellant, J.B., and Fuoco. 
When the officers arrested them, they found methamphetamine and drug
paraphernalia on Fuoco.  

On June 16, 2005, the jury found appellant guilty of
possession of a controlled substance with intent to deliver and assessed her
punishment at seven years in the Institutional Division of the Texas Department
of Criminal Justice. 

III.  Legal and
Factual Sufficiency

In her first and second issues, appellant contends that the
evidence is legally and factually insufficient to prove that she committed the
offense of possession of a controlled substance with intent to deliver.

                                           A.  Standards of Review








In reviewing the legal sufficiency of the evidence to
support a conviction, we view all the evidence in the light most favorable to
the verdict in order to determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Hampton v. State, 165 S.W.3d 691, 693
(Tex. Crim. App. 2005).








In reviewing the factual sufficiency of the evidence to
support a conviction, we are to view all the evidence in a neutral light,
favoring neither party.  See Zuniga v.
State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual
sufficiency review is whether, considering the evidence in a neutral light, the
fact-finder was rationally justified in finding guilt beyond a reasonable
doubt.  Id. at 484.  There are two ways evidence may be factually
insufficient:  (1) when the evidence
supporting the verdict or judgment, considered by itself, is too weak to
support the finding of guilt beyond a reasonable doubt; or (2) when there is
evidence both supporting and contradicting the verdict or judgment and,
weighing all of the evidence, the contrary evidence is so strong that guilt
cannot be proven beyond a reasonable doubt. 
Id. at 484-85.  AThis standard
acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id.
at 485.  In other words, evidence
supporting a guilty finding can outweigh the contrary proof but still be
insufficient to prove the elements of an offense beyond a reasonable
doubt.  Id.           In
performing a factual sufficiency review, we are to give deference to the
fact-finder=s determinations, including determinations
involving the credibility and demeanor of witnesses.  Id. at 481; Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). 
We may not substitute our judgment for the fact-finder=s.  Zuniga, 144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination
of all the evidence.  Id. at 484,
486-87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

                                                B.  Applicable Law

A person commits the offense of possession of a controlled
substance with intent to deliver if the person Aknowingly . . .
possesses with intent to deliver a controlled substance listed in Penalty Group
1.@  Tex.
Health & Safety Code Ann. ' 481.112(a)
(Vernon 2003).  Section 7.02(a)(2) of the
penal code states that A[a] person is criminally responsible for
an offense committed by the conduct of another if . . . acting with intent to
promote or assist the commission of the offense, he solicits, encourages,
directs, aids, or attempts to aid the other person to commit the offense.@  Tex.
Penal Code Ann. ' 7.02(a)(2) (Vernon 2003).








To convict a defendant for possession of a controlled
substance, the State must show that the defendant knowingly or intentionally
possessed the controlled substance.  Seals
v. State, 187 S.W.3d 417, 419 (Tex. Crim. App. 2005).  A[A]n accused must
not only have exercised actual care, control, or custody of the substance, but
must also have been conscious of his connection with it and have known what it
was, evidence which affirmatively links him to it suffices for proof that he
possessed it knowingly.@  Brown
v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).








Further, intent to deliver can be proven by circumstantial
evidence.  See Jordan v. State,
139 S.W.3d 723, 726 (Tex. App._Fort Worth 2004,
no pet.); Rhodes v. State, 913 S.W.2d 242, 251 (Tex. App._Fort Worth 1995), aff'd, 945
S.W.2d 115 (Tex. Crim. App.), cert. denied, 522 U.S. 894 (1997); Williams
v. State, 902 S.W.2d 505, 507 (Tex. App._Houston [1st Dist.] 1994, pet.
ref'd); Reece v. State, 878 S.W.2d 320, 325 (Tex. App._Houston [1st Dist.] 1994, no
pet.).  Courts have considered several
factors in determining intent, including: 
(1) the nature of the location where the defendant was arrested; (2) the
quantity of drugs the defendant possessed; (3) the manner of packaging of the
drugs; (4) the presence or absence of drug paraphernalia (for use or sale); (5)
whether the defendant possessed a large amount of cash in addition to the
drugs; and (6) the defendant's status as a drug user. Jordan, 139 S.W.3d
at 726; Williams, 902 S.W.2d at 507; Reece, 878 S.W.2d at
325.  Expert testimony may be introduced
to prove intent to deliver.  See
Bryant v. State, 997 S.W.2d 673, 675 (Tex. App._Texarkana 1999, no pet.); Rhodes,
913 S.W.2d at 251; Mack v. State, 859 S.W.2d 526, 529 (Tex. App._Houston [1st Dist.] 1993, no pet.);
Branch v. State, 833 S.W.2d 242, 244‑45 (Tex. App._Dallas 1992, pet. ref'd).

Appellant is correct in stating that proof that an accused was
present at the crime scene, standing alone, is insufficient.  Wooden v. State, 101 S.W.3d 542, 546
(Tex. App.CFort Worth 2003, pet. ref=d); Scott v.
State, 946 S.W.2d 166, 168 (Tex. App.CAustin 1997, pet.
ref=d).  However, while presence of an accused at the
scene of an offense is not alone sufficient to support a conviction, it is a
circumstance tending to prove guilt, which, combined with other facts, may
suffice to show that the accused was a participant.  Beardsley v. State, 738 S.W.2d 681,
685 (Tex. Crim. App. 1987); Valdez v. State, 623 S.W.2d 317, 321 (Tex.
Crim. App. [Panel Op.] 1981)(op. on reh=g). 








In this case, the jury was authorized to find appellant
guilty under the law of parties. 
Evidence is legally sufficient to convict under the law of parties when
the defendant is physically present at the commission of the offense and
encourages its commission by acts, words, or other agreement.  Wooden, 101 S.W.3d at 546; see also
Tex. Penal Code Ann. ' 7.02(a)(2).  The evidence must show that at the time of
the offense the parties were acting together, each contributing some part
towards the execution of their common purpose. 
Wooden, 101 S.W.3d at 546; Brooks v. State, 580 S.W.2d
825, 831 (Tex. Crim. App. [Panel Op.] 1979). Circumstantial evidence may be
used to prove party status.  Escobar
v. State, 28 S.W.3d 767, 774 (Tex. App.CCorpus Christi
2000, pet. ref=d). 


Whether an accused participated as a party to an offense
may be determined by examining the events occurring before, during, and after
the commission of the offense and by the actions of the accused that show an
understanding and common design to commit the offense.  Id. 
In determining the sufficiency of the evidence to show an appellant=s intent and faced
with a record that supports conflicting inferences, we must presume, even if it
does not affirmatively appear in the record, that the trier of fact resolved
any such conflict in favor of the prosecution, and we must defer to that
resolution.  Matson v. State, 819
S.W.2d 839, 846 (Tex. Crim. App. 1991); Escobar, 28 S.W.3d at 774.

                                               C.  Applicable Facts








At trial, Detective Davis testified that he arrested Amaya
on April 12, 2004, for possession of marijuana and possession of firearms by a
felon.  He stated that he interviewed
Amaya after he was arrested and that Amaya said that he thought he knew people
from whom Amaya could purchase narcotics from and agreed to help the police in
arresting the individuals.[2]  Amaya then gave Detective Davis the names and
information of appellant and J.B. as possible individuals for the drug
purchase.  Detective Davis stated that he
told Amaya to make phone calls to appellant and J.B. to see if they would sell
Amaya the drugs and then to report back to him. 
Detective Davis testified that after speaking with J.B. and appellant,
Amaya called him on April 25, 2004, and said that he had a pretty firm plan and
that he could probably buy drugs the next day, April 26.  Amaya stated that he had talked to J.B. and
appellant, in unrecorded phone calls, over the previous several days to
possibly buy a quarter ounce of methamphetamine and six pounds of marijuana.  After talking to Amaya, Detective Davis told
him to call back in the morning and that they would meet and make recorded
phone calls to appellant and J.B.








Detective Davis stated that on April 26, he met Amaya at a
carwash down the street from where Amaya was staying, and made the recorded
phone calls.  He stated that after
listening to the phone calls, he told William Scott, a lieutenant with the
Denton County Sheriff=s Office, to arrest appellant, J.B., and
Fuoco for drug possession.  Detective
Davis said that he believed appellant was involved after listening to the phone
conversations because she was assisting in the transaction.  He said that in the first recorded phone
call, appellant=s name was not mentioned, but that in the
second recorded phone call, appellant gave Amaya directions to the mechanic=s shop.  Detective Davis stated that appellant knew
that a drug transaction was about to take place.  Lieutenant Scott testified that on April 26, 2004, he set up
surveillance at appellant=s mother=s house and that
it was his understanding that there was going to be a drug deal in Lewisville
or Denton that day.  Lieutenant Scott
stated that he was in an undercover vehicle by himself and that Deputy Sheriff
Shawn Clary was in another undercover vehicle. 
He said that Randy Robinson, a Denton county sheriff=s deputy, was also
involved in the surveillance of the house. 
Lieutenant Scott stated that while they were watching the house,
appellant, J.B., and Fuoco got into a car with two unidentified females and
drove to the mechanic=s shop. 
He testified that he talked with Detective Davis who told him that
appellant=s car was at the mechanic=s shop and that appellant
could not get the car out until the drug transaction had occurred because there
was a mechanic=s bill against the car. 








Lieutenant Scott stated that Detective Davis told him that
Fuoco, the one with the backpack, had the drugs.  He said that he waited to arrest appellant,
J.B., and Fuoco until the three had congregated in front of the mechanic=s shop
together.  Once the three had gathered in
front of the building, Lieutenant Scott gave the signal for two Lewisville
Police Department marked cars and three undercover cars to drive to the
mechanic=s shop to arrest
appellant, J.B., and Fuoco.  He stated
that methamphetamine was found in Fuoco=s right front
pocket and that electronic scales and drug paraphernalia were found in his
backpack.  

Amaya testified that he was arrested in 2004 by Detective
Davis and was charged with possession of guns by a felon and marijuana.  He stated that after being arrested, he
agreed to cooperate with Detective Davis in arresting other drug dealers.  Amaya stated that he called appellant=s mother=s cell phone
within a week after being arrested, told appellant he wanted to buy some Aice,@ and appellant
said that she could get it for him.  He
stated that he had met appellant to buy drugs while J.B. was in jail.








Amaya testified that he talked to appellant and J.B. three
or four times between his initial phone call to appellant and April 26 about
purchasing the methamphetamine. 
Specifically, Amaya stated that he talked with appellant and J.B. about
purchasing a quarter ounce of methamphetamine and that the cost of the
methamphetamine would be $300.  He stated
that the drug transaction was initially supposed to take place in Denton but
that the location changed to a mechanic=s shop in
Lewisville because appellant=s car was being
fixed at the mechanic=s shop and she needed money to get the car
out. However, Amaya stated that the money was not going to pay for the car to
get out of the shop but was strictly for buying the drugs.  Amaya made a recorded phone conversation with
appellant in which appellant told him that the drug dealer was at the mechanic=s shop.

Fuoco testified that on April 26 police arrested him with
appellant and J.B. because he had seven grams of methamphetamine on him that he
was planning to sell to J.B.=s friend.  Fuoco stated that he had known appellant and
J.B. for approximately two years before they were arrested.  He said that appellant had delivered
methamphetamine to him while J.B. was in jail.








On April 26, Fuoco stated that he went to appellant=s mother=s house and talked
with J.B. about what was going to happen and that appellant was there during
the conversation.  He stated that while
he was at the house, he showed appellant and J.B. the methamphetamine.  After approximately thirty minutes,
appellant, J.B., and Fuoco went to the mechanic=s shop to wait for
the buyer. However, after waiting about thirty minutes at the mechanic=s shop, appellant
and Fuoco walked to her house, and J.B. continued to wait at the mechanic=s shop.  Fuoco stated that he asked appellant one or
two times while they were at the house when the buyer was going to arrive.  After approximately five minutes of being at
the house, appellant and Fuoco walked back to the mechanic=s shop, and
appellant went to a phone and called the buyer to find out what was taking him
so long to get to the shop.  After
appellant got off the phone, she told Fuoco that the buyer was on his way. 

Fuoco stated that he did not like testifying against
appellant.  He stated that he thought
appellant was there to get her car out of the mechanic=s shop and because
she did not trust J.B. with her car. 
Fuoco testified that he only dealt with J.B., not appellant, concerning
the drug transaction.  However, Fuoco
testified that appellant knew that he was there to sell methamphetamine. He
stated that he was under the impression that after the drug transaction,
appellant was going to give him a ride back to his house.  Fuoco said that appellant did not assist or
encourage him to put the methamphetamine in his pocket. 

                                                     D.  Analysis

Appellant argues that the evidence shows that she was never
in possession of the methamphetamine and that she was not involved in arranging
the drug transaction.  The issue is
whether appellant acted with intent to assist the commission of the offense by
aiding Fuoco=s possession with intent to deliver the
methamphetamine.  








The State showed that Amaya gave appellant=s name to
Detective Davis as someone from whom he could purchase methamphetamine.  The State demonstrated that appellant was
present at the scene and that she went to the mechanic=s shop with J.B.
and Fuoco.  The evidence further shows
that appellant made a phone call to Amaya, the buyer, to find out when he was
going to arrive at the mechanic=s shop and then
told Fuoco that the buyer was Aon his way.@  Indeed, no evidence showed that anyone else
made the phone call.  Additionally, Amaya
testified that he discussed the price and quantity of the methamphetamine with
both appellant and J.B. and that on April 25 he talked with appellant and J.B.
three or four times regarding the drug transaction.

Detective Davis testified that he heard appellant give
Amaya directions to the mechanic=s shop so that
Amaya could purchase the drugs. 
Detective Davis stated that after hearing the tape of the phone call, he
believed that appellant was involved in the drug transaction.  Lieutenant Scott stated that he set up
surveillance at the mechanic=s shop and saw
appellant, J.B., and Fuoco arrive together. 








Fuoco testified that he went to appellant=s mother=s house first,
showed appellant and J.B. the drugs, and then they walked to the mechanic=s shop to wait for
the buyer.  Fuoco stated that after he
and appellant walked back to her mother=s house, he asked
her one or two times when the buyer was going to arrive.  He testified that after walking back to the
mechanic=s shop, appellant
went to a pay phone and called the buyer to ask what was taking him so long to
get there.  After she got off the phone,
appellant told Fuoco that the buyer said that he was on his way.  After reviewing the evidence, we hold that
appellant=s actions imply Aguilty knowledge.@  Salazar v. State, 95 S.W.3d 501, 505
(Tex. App.CHouston [1st Dist.] 2002, pet. ref=d).  

We hold that the evidence, when viewed in the light most
favorable to the verdict, supports a determination beyond a reasonable doubt
that appellant possessed the methamphetamine with the intent to deliver.  Therefore, we overrule appellant=s first
issue.  Additionally, when viewed
neutrally, the evidence is not so obviously weak or so greatly outweighed by
contrary proof that it would not support the finding of guilty beyond a
reasonable doubt.  We overrule appellant=s second issue.

                                            IV.  Extraneous Offense

In appellant=s third and fourth
issues, she contends that the trial court abused its discretion by allowing
Amaya and Fuoco to testify regarding an extraneous offense during the
guilt-innocence phase in violation of rules 403 and 404(b) and that the
testimony was not sufficiently corroborated under the accomplice-witness
rule.  

                                    A.  Extraneous Offense Evidence








Rule 401 provides, A>[r]elevant
evidence= means evidence
having any tendency to make the existence of any fact that is of consequence to
the determination of the action more probable or less probable than it would be
without the evidence.@  Tex. R. Evid. 401.  Rule 403 states, A[a]lthough
relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence.@  Tex.
R. Evid. 403.

Rule 404(b) provides,

Evidence
of other crimes, wrongs or acts is not admissible to prove the character of a
person in order to show action in conformity therewith.  It may, however, be admissible for other
purposes, such as proof of motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident, provided that upon
timely request by the accused in a criminal case, reasonable notice is given in
advance of trial of intent to introduce in the State=s case-in-chief such evidence other
than that arising in the same transaction. 


 

Tex. R. Evid. 404(b).

                                            1.  Standard of Review








The admissibility of evidence is within the discretion of
the trial court and will not be overturned absent an abuse of discretion.  Moses v. State, 105 S.W.3d 622, 627
(Tex. Crim. App. 2003); Soto v. State, 156 S.W.3d 131, 134 (Tex. App._Fort Worth 2005, pet. ref=d). That is to
say, as long as the trial court=s ruling was
within the zone of reasonable disagreement, the appellate court should affirm.  Moses, 105 S.W.3d at 627; see also
Montgomery v. State, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1991) (op. on
reh=g); Karnes v.
State, 127 S.W.3d 184, 189 (Tex. App._Fort Worth 2003, no pet.).  To constitute an extraneous offense, the
evidence must show that a crime or bad act was committed and that the defendant
was connected to it.  Moreno v. State,
858 S.W.2d 453, 463 (Tex. Crim. App.), cert. denied, 510 U.S. 966
(1993).








Rule 404(b) prohibits the admission of evidence of Aother crimes,
wrongs, or acts@ in a criminal case to prove that the
defendant acted in conformity with his character to commit crimes.  Tex.
R. Evid. 404(b); Marc v. State, 166 S.W.3d 767, 775 (Tex. App._Fort Worth 2005, pet. ref=d).  Such evidence of extraneous offenses may be
admitted for other purposes, however, such as proof of motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence of mistake or
accident.  See Moses, 105 S.W.3d
at 626; Nguyen v. State, 177 S.W.3d 659, 666 (Tex. App._Houston [1st Dist.] 2005, pet.
filed).  The permissible uses listed in
rule 404(b) of when character evidence may be used are illustrative, not
exhaustive.  Montgomery, 810
S.W.2d at 387.  The court of criminal
appeals has held that evidence of extraneous transactions may be admitted in
drug possession cases whenever they tend Ato prove the
requisite affirmative link to the contraband.@  Brown v. State, 911 S.W.2d 744, 748
(Tex. Crim. App. 1995) (quoting Saenz v. State, 843 S.W.2d 24, 27 (Tex.
Crim. App. 1992)).   

2.  Analysis

Appellant=s complaint
relates to (1) Amaya=s testimony that he had spoken with
appellant prior to the instant offense regarding the purchase of drugs and (2)
Fuoco=s testimony that
appellant had sold him drugs on prior occasions.  During the hearing outside the presence of
the jury, appellant argued that the probative value of the evidence was
outweighed by undue prejudice.  However,
the trial court overruled appellant=s objection and allowed
the testimony. 

Appellant=s defensive theory
was that she was only present at the scene to get her car out of the shop and
that she did not participate in the offense. 
Appellant contends that there are no affirmative links that show that
she possessed the methamphetamine with the intent to deliver.  Appellant relies on Carter v. State to
support her contention that the trial court abused its discretion by admitting
the extraneous offenses.  145 S.W.3d 702
(Tex. App.CDallas 2004, pet. ref=d).  However, we determine that Carter is
distinguishable from the present case.  








In Carter, the defendant sold an undercover officer
marijuana and crack cocaine on December 31 from a house.  Id. at 705.  Two weeks later, the undercover officer and
several other officers went back to the house to execute an arrest and search
warrant and found three grams of cocaine in a back room.  Id. at 706.  At trial, the trial court allowed the State
to present testimony regarding the three grams of cocaine; however, the jury
was instructed that it could consider the extraneous offense solely for
determining the defendant=s intent in the case.  Id. at 708.  On appeal, the Dallas Court of Appeals held
that the extraneous offense does not tend to make the existence of a material
fact more or less probable.  Id.  The court stated that the defendant=s defensive theory
was not that he sold the cocaine but that he Adid not know it
was cocaine or that he did not intend to sell it.@  Id. 


Here, on the other hand, appellant conceded that she was
present and knew that a drug transaction was going to occur, but she did not
admit that she participated in the transaction. 
Because the extraneous offense evidence makes appellant=s intent to
participate in the offense more probable, we hold that the trial court did not
abuse its discretion by admitting the extraneous offenses under rule
404(b).  Tex. R. Evid. 404(b); see Payton v. State, 830 S.W.2d
722, 730 (Tex. App.CHouston [14th Dist.] 1992, no pet.)
(holding evidence that defendant sold drugs two days before arrest was relevant
to show he possessed drugs with intent to deliver).  








We must now determine whether the trial court abused its
discretion by admitting the evidence in light of appellant=s objection on
relevancy under rule 403.  Tex. R. Evid. 403; see Montgomery,
810 S.W.2d at 388.  Rule 403 favors the
admissibility of relevant evidence, and the presumption is that relevant
evidence will be more probative than prejudicial.  Montgomery, 810 S.W.2d at 389.  In Santellan v. State, the court of
criminal appeals restated the factors discussed in Montgomery that
should go into the balancing test:  

(1) how compellingly the extraneous
offense evidence serves to make a fact of consequence more or less probable‑‑a
factor which is related to the strength of the evidence presented by the
proponent to show the defendant in fact committed the extraneous offense;

 

(2) the potential the other offense
evidence has to impress the jury Ain some irrational but nevertheless indelible way@;

 

(3) the time the proponent will
need to develop the evidence, during which the jury will be distracted from
consideration of the indicted offense; [and]

 

(4) the force of the proponent's
need for this evidence to prove a fact of consequence, i.e., does the proponent
have other probative evidence available to him to help establish this fact, and
is this fact related to an issue in dispute. 


 

939
S.W.2d 155, 169 (Tex. Crim. App. 1997) (footnote omitted); Marc, 166
S.W.3d at 776. 








We now turn to an examination of the factors set out in Santellan.  Here, 
evidence that appellant had sold drugs prior to her April 26 arrest is
probative of the fact that she intended to participate in the possession and
delivery of the drugs.  Amaya=s and Fuoco=s testimony
regarding the extraneous offenses help to rebut the defensive theory that
appellant was merely present at the scene and did not participate in the
anticipated drug transaction. 
Additionally, the extraneous act is not more heinous than the charged
offense and therefore the potential for the extraneous offense to impress the
jury in an irrational way is slight. 
Further, the State did not spend a lot of time introducing the
extraneous offenses to the jury.  The
State did not mention the extraneous offenses in its opening or closing
arguments.  In fact, the extraneous
offenses were only discussed for approximately six out of 109 pages of
testimony.  However, there was a need for
the extraneous offense evidence to be introduced because appellant questioned
the State=s affirmative link between appellant and
the offense of possession of methamphetamine with the intent to deliver.

Finally, the trial court provided the jury with a limiting
instruction that the extraneous offenses should only be used as an aid to help
the jury determine whether or not appellant participated in the offense.  We conclude that the trial court correctly
determined that the probative value of the evidence was not substantially
outweighed by its prejudicial effect.  We
hold that the trial court did not abuse its discretion by admitting the
extraneous offense evidence under rule 403. 








                                   B.
Accomplice Witness Testimony

                                            1.  Standard of Review








Article 38.14 of the code of criminal of procedure provides
that A[a] conviction
cannot be had upon the testimony of an accomplice unless corroborated by other
evidence tending to connect the defendant with the offense committed; and the
corroboration is not sufficient if it merely shows the commission of the
offense.@  Tex. Code Crim. Proc. Ann art. 38.14 (Vernon
2005).  In conducting a sufficiency
review under the accomplice-witness rule, the reviewing court must eliminate
the accomplice testimony from consideration and then examine the remaining
portions of the record to ascertain if there is any evidence that tends to
connect the accused with the commission of the crime.[3]  Solomon v. State, 49 S.W.3d 356, 361
(Tex. Crim. App. 2001); Hernandez v. State, 939 S.W.2d 173, 176 (Tex.
Crim. App. 1997).  ATendency to
connect@ rather than
rational sufficiency is the standard: 
the corroborating evidence need not be sufficient by itself to establish
guilt beyond a reasonable doubt.  Solomon,
49 S.W.3d at 361; Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App.
1999), cert. denied, 528 U.S. 1082 (2000).  Nor is it necessary for the corroborating
evidence to directly link the accused to the commission of the offense.  Cathey, 992 S.W.2d at 462.  The accomplice-witness rule is a statutorily
imposed sufficiency review and is not derived from federal or state
constitutional principles that define the legal and factual sufficiency
standards.  Id. at 462-63.  To satisfy the accomplice-witness rule there
simply needs to be other evidence tending to connect the accused to the
commission of the offense.  See id.
at 463.

                                                     2.  Analysis

During oral arguments, appellant conceded that Fuoco was
not an accomplice; therefore, our sole inquiry is to determine whether the
trial court abused its discretion by allowing Amaya to testify during the
guilt-innocence phase that, prior to the present offense, he had spoken with
appellant regarding the purchase of drugs seven to eight times on the
telephone, that he had asked appellant if she could provide methamphetamine to
his brother, and that appellant stated that she could provide the
methamphetamine.








At trial, Amaya testified that before appellant and J.B.
were arrested, Amaya had called appellant seven or eight times to purchase
methamphetamine for his brother.  He
stated that when he called appellant, she indicated that she would be able to
provide the methamphetamine.  The State
presented no other evidence regarding appellant=s agreeing to sell
Amaya=s brother
methamphetamine.  Appellant argues that
Amaya=s testimony should
have been corroborated because Amaya could be charged with delivery of
methamphetamine as an accomplice to the extraneous offense.

As stated above, section 481.112 provides that Aa person commits
an offense if the person knowingly manufactures, delivers, or possesses with
intent to deliver a controlled substance.@ Tex. Health & Safety Code Ann. ' 481.112(a)
(emphasis added).  Section 481.002(25)
defines Amanufacture@ as Athe production,
preparation, propagation, compounding, conversion, or processing of a
controlled substance.@  Id. ' 481.002(25)
(Vernon Supp. 2005).  Delivery is defined
as Ato transfer, actually
or constructively, to another a controlled substance, counterfeit, or drug
paraphernalia, regardless of whether there is an agency relationship.  This term includes offering to sell a
controlled substance, counterfeit substance, or drug paraphernalia.@  Id. ' 481.002(8).  Possession is defined as Aactual care,
custody, control, or management.@  Id. ' 481.002(38).  








Here, Amaya did not testify that he manufactured the
methamphetamine with appellant nor did he testify that he participated in the
delivery of the methamphetamine. 
Additionally, he did not testify that he had actual care, custody,
control, or management of the methamphetamine. 
Amaya simply stated that he called appellant for his brother and that
appellant said that she could provide his brother with methamphetamine.  Amaya did not testify that his brother actually
bought the methamphetamine from appellant.  Thus, we determine that Amaya was not an
accomplice to the extraneous offense because he never testified that he
participated with appellant in the delivery of methamphetamine to Amaya=s brother.  Therefore, we hold that the trial court did
not err by refusing to require the State to corroborate Amaya=s testimony
regarding appellant=s agreeing to provide his brother
methamphetamine.  See Green v. State,
72 S.W.3d 420, 424 (Tex. App.CTexarkana 2002,
pet. ref=d) (declining to
address corroboration when witness was not an accomplice as a matter of law and
there was Ano jury finding that she was an accomplice
as a matter of fact@); Reyna v. State, 22 S.W.3d 655,
660 (Tex. App.CAustin 2000, no pet.) (declining to
address whether the corroboration was sufficient when the witness was not an
accomplice as a matter of law).  Because
we determine that Amaya is not an accomplice and that the trial court did not
abuse its discretion by admitting the extraneous offense evidence under rules
403 and 404, we overrule appellant=s third and fourth
issues.

 

 

 








                                                   V.  Conclusion

Having overruled appellant=s four issues, we
affirm the trial court=s judgment.

 

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL B:    LIVINGSTON,
HOLMAN, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex. R.
App. P. 47.2(b)

 

DELIVERED: July 13, 2006











[1]See Tex. R. App. P. 47.4.





[2]Detective
Davis told Amaya that he would make recommendations to his boss and the
district attorney based on Amaya=s cooperation.





[3]The
court of criminal appeals has declined to address the issue of whether accomplice
testimony must be corroborated during the guilt-innocence phase at trial.  See Rice v. State, 605 S.W.2d 895, 903
n.1 (Tex. Crim. App. [Panel Op.] 1980) (op. on reh=g).