*1068-15*

NO. PD-1068-15

ORIGINAL

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

NOV 13 2015

Abel Acosta, Clerk

CHRISTOPHER ALAN LAWRENCE

Appellant/Petitioner

FILED IN
COURT OF CRIMINAL APPEALS

• NOV 13 2015

VS.

THE STATE OF TEXAS

Appellee/Respondent

Abel Acosta, Clerk

---

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

In Appeal NO. 03-14-00192-CR

from

Court of Appeals

for the Third Judicial District

Austin, Texas

CHRISTOPHER ALAN LAWRENCE

TDCJ #1923479

3001 S. EMILY DR.

BEEVILLE, TX 78102

# TABLE OF CONTENTS

INDEX OF PARTIES     III.

INDEX OF AUTHORITIES     IV.

STATEMENT REGARDING ORAL ARGUMENT     !.

STATEMENT OF THE CASE     2.

STATEMENT OF PROCEDURAL HISTORY     3.

GROUNDS FOR REVIEW     4.

### GROUND FOR REVIEW NO. ONE

The Court of Appeals erred in holding that there was no error when the trial court overruled Appellant/Petitioner's timely objection to the admissability of video, photographic, and documentary evidence depicting child pornography.

### GROUND FOR REVIEW NO. TWO

The evidence is legally and factually insufficient to support a conviction for Aggravated Sexual Assault of a Child.

ARGUMENT NUMBER ONE     5-7.

ARGUMENT NUMBER TWO     7-8.

PRAYER FOR RELIEF     9.

CERTIFICATE OF SERVICE     10.

APPENDIX[MEMORANDUM OPINION     11.

## LIST OF PARTIES AND COUNSEL

Appellant - Christopher Lawrence

Appellee - The State of Texas

### APPELLANT COUNSEL

Manual C. Rodriguez Jr.

Lincoln Center-Suite 535
7800 IH-10 West
San Antonio, Texas 78230

Attorney for Appellant at Trial

C. Wayne Huff

P.O.Box 2334
Boerne, Texas 78006
(210)803-4127(phone)
(830)230-5567(fax)
cwhuff@aol.com

Attorney for Appellant on Appeal

### APPELLEE COUNSEL

Sammy M McCrary

Chief Felony Prosecutor
Comal County Criminal District Attorney's Office

150 N. Seguin Avenue, Suite 307
New Braunfels, Texas 78130
(830)221-1300(phone)
(830)608-2008(fax)

Jennifer A. Tharp

District Attorney
Comal County Criminal District Attorney's Office

150 N. Seguin Avenue, Suite 307
New Braunfels, Texas 78130
(830)221-1300(phone)
(830)608-2008(fax)

# INDEX OF AUTHORITIES

## CASES

Abshire V. State, 62 S.W.3d 857,860(Tex.App. - Texarkana 2001)...5

Bush V. State, 628 S.W.2d 441,444(Tex. Crim. App. 1982)..........5

Carter V. State, 145 S.W.3d 702, 707 (Tex App. - Dallas 2004)....5

Jackson V. Virginia, 443 U.S.307, 99 S.Ct.2781(1973).............7

Jones V. State, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998).......8

Lane V. State, 933 S.W.2d 504, 519(Tex. Crim. App. 1996).........5

Montgomery V. State, 810 S.W.2d372, 386(Tex. Crim. App. 1991)....6

Morales V. State, 32 S.W.3d 862, 867(Tex. Crim. App. 2000).......6

Motille V. State, 78 S.W.3d 352, 356 (Tex. Crim. App. 2002)......6

Powell V. State, 63 S.W.3d 435, 438 (Tex. Crim. App.)............5

Prior V. State, 647 S.W.2d 956, 959(Tex. Crim. App. 1983)........5

Ranking V. State, 974 S.w.2d 707, 719(Tex. Crim. App. 1998)......5

Sharp V. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).......8

## STATUTES

Texas Rules of Evidence 404(b).....................................5

NO. PD-1068-15

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

---

CHRISTOPHER ALAN LAWRENCE
                    Appellant/Petitioner

VS.

THE STATE OF TEXAS
                    APPELLEE/rESPONDENT

---

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TO THE COURT OF CRIMINAL APPEALS OF TEXAS

Appellant/Petitioner respectfully submits this Petition for Discretionary Review and moves that this Honorable Court grants review of this cause and offers the following in support there of:

### STATEMENT REGARDING ORAL ARGUMENT

The Appellant/Petitioner requests oral argument in this case because such argument may assist the Court in applying the facts to the issues raised. It is suggested that oral argument may help simplify the facts and clarify the issues.

1.

## STATEMENT OF THE CASE

A Jury found the Appellant/Petitoner guilty on two (2) counts of Aggravated Sexual Assault of a Child. Appellant/Petitioner gave a timely notice of appeal.

Appellant/Petitioner raised the issue that the Trial Court erred in its decision to overrule Appellant/Petitioner's timely objection to the admissability of video, photographs and documentary evidence depicting child pornography.

The Third District Court of Appeals affirmed the Appellant/Petitioner's appeal stating,"...Moreover, given our ultimate resolution that the District Court did not abuse its discretion by admitting the evidence under Rule 404(b) for other purposes, we need not further address this ruling by the District Court." The Appellant/Petitioner file an Motion for Rehearing, and was subsequently denied.

## STATEMENT OF PROCEDURAL HISTORY

In Cause No. CR-2013-543 Appellant/Petitioner was charged with a four (4) Count indictment of Continuous Sexual Assault of a Child and Aggravated Sexual Assault of a Child. Texas Penal Code §22.021(f)(1). The Continuous Sexual Assault of a Child was dropped prior to Jury Trial.

On March 19, 2015 the Jury found Appellant/Petitioner guilty of two (2) Counts of Aggravated Sexual Assault of a Child. On March 20,2015 The Jury assessed a punishment of 30 years for one count and 70 years for the second. The conviction was appealed on July 16, 2015, and was subsequently affirmed on the same date. The Motion for Rehearing was filed on July 29, 2015 and was subsequently denied.

On this __6th__ day of__November__, 2015 this Petition for Discretionary Review was timely forwarded to the Court of Criminal Appeals of Texas for filing pursuant to Rule 9.2(b), Texas Rules of Appellate Procedure.

3.

## GROUNDS FOR REVIEW

### I.

The Court of Appeals erred in holding that there was no error when the trial court overruled Appellant/Petitioner's timely objection to the admissability of video, photographic, and documentary evidence depicting child pornography.

### II.

The evidence is legally and factually insufficient to support a conviction for Aggravated Sexual Assault of a Child.

4.

## ARGUMENT NUMBER ONE

Evidence of extraneous offense, i.e 'other crimes, wrongs or acts," is inadmissible to prove the character of a person in order to show action in conformity with that character. Tex.R.Evid.404(b); Carter V. State, 145 S.W.3d 702, 707(Tex. App-Dallas 2004) An exception to this rule of inadmissibility provides that evidence of other crimes, wrongs, or acts may be admissible for another purpose, for example, to prove motive, oppurtunity, intent, preperation, plan, knowledge, identity or absence of mistake or accident." Powell V. State, 63 S.W.3d 435, 438(Tex.Crim.App.2001); Montgomery V. State, 810 S.W. 372, 386(Tex. Crim. App. 1991). Possession of pornography in an extraneous offense.

Clearly the evidence was not admissible to rebut a defensive theory of lack of intent since Appellant denied that the offense occured at all. Rankin V. State S.W. 2d 707,719(Tex. Crim App. 1998). Nor was it admissible to show motive because motive is not a required element of the offense. Bush V. State, 628 S.W.2d 441,444(Tex Crim. App 1982).

An extraneous offense can be admissable pursuant to Rule 404(b) to rebut a defense of lack of oppurtunity or impossibility. Abshire V. State, 62 S.W.3d 857,860(Tex. App - Texarkana 2001) No such claim was made in this case. Likewise Appellant's identity was never in question nor did he raise mistake or accident; consequently the evidence was not admissible to prove these issues. Lane V. State 933 S.W.2d 504, 519(Tex.Crim.App. 1996); Prior V. State, 647 S.W.2d 956,959 (Tex. Crim. App. 1983).

Clearly, Appellant was harmed by the admission of the child pornography evidence. The State was able to bring before the jury

videos with such titles as "Father and hi ten-year old twind daughters", "11 year-old,13 year-old, suck first time, lesbo play.avi*", PTHC (preteen hardcore), PTSC stick em 2009,Julie, three ten-year-olds. 18 lavi*". "PTHCnew, Amber, virgin pussy, 11-12-year-old,pedo. PTSCavi*","Russia,Lelia(12)-Daddy does her 3 times","2010 9yo-suziQ-too tight. avi", 9yo Izabel-anal (with sound)mpg","Young girl, lolita, pedo, fuck brother","a good five-year old fuck." (RR4:64-69) the above is just a sample of titles that are contained in the printout admitted before the jury and contents of the flash drive (State's Exhibits 25 & 26). The State's witness testified that in a search for PTHC(preteen hardcore) he received 26,526 hits, and in a search for "lolita" he received 5142 hits.

In assessing harm, factors to be considered include the nature of evidence supporting the verdict, the character of the alleged error, and how the evidence might be considered in connection with the other evidence in the case. Motilla V. State, 78 S.W..3d 352, 356 (Tex.Crim.App. 2002); Morales V. State, 32 S.W.3d 862,867 (Tex.Crim.App.2000).

In this case the occurence of the offense itself was refused not only by Appellant, but also by his mother and step-father. The admitted evidence represented a huge trove of material bearing on an offense not alleged in the indictment and not shown to be connected in any way to issues at trial. The overwhelimg nature of this evidence was prejudicial to this defendant at both phases of the trial.

Not only was the evidence prjudicial, but it was heavily emphasized by the state during trial and particularly during final argument. (RR5: 41-44) Motilla V. State at 355-356.

6.

Petitioner feels that it is imperitive that this Court of Criminal Appeals reviews this issue because of the inherently prejudicial nature of the video,photographic and documentary evidence depicting child pornography.

## ARGUMENT NUMBER TWO

Due to ineffective assistance of counsel on appeal the Court of Appeals was unable to review the case to determine if the evidence was sufficient to support "rational" determination that Lawrence was guilty of Aggravated Sexual Assault of a Child. The whole point of this issue is the fact that the State overcharged the original allegations - which at best could only be probable cause on indecency with a child - The incident alleged in the indictment involved 'ONE' incident where the child and the accused were laying on a couch "fully clothed" with other people in the general vicinity. The testimony and facts were "created" by law enforcement and prosecutors by soliciting the proper words and phrases necessary to obtain a conviction. This is nothing more than a cleverly designed "witchhunt."

In a legal sufficiency review the appellate court reviews all the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson V. Virginia, 443 U.S.307, 99 S.Ct.2781(1973).

7.

In this case the "interpretations" of facts and circumstances was considered evidence. Of course the jury could find guilt by the clever solicitation of words and phrases with the added benefit of extreme prejudice. This case draws a question as to what is rational? It is not rational to believe a "grown" man could insert his penis into the anus of a child without causing traceable damage. This is a common sense question of "size". add the fact that both parties were "FULLY CLOTHED" while laying on the couch, while other persons in the vicinity and it becomes clearly "irrational.."

The jury is the sole judge of the credibility of the witnesses, is free to believe or disbelieve all or part of a witness testimony. Jones V. State, 984 S.W.2d 254,257(Tex.Crim.App.1998). The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses to, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. Sharp V. State, 707 S.W.2d 611,614(Tex.Crim.App.1986).

Due to ineffective assistance by court appointed counsel the state was given free reign to obtain a conviction and because the record was clearly scripted by the prosecutor and the court appointed attorney, the conviction was safe from challenge.

This case is a clear representation of a modern day witchhunt. Fear and prejudice secured a conviction for a crime in which the accused is actually innocent, but since he is not a lawyer the courts follow the pernicious ways of the prosecutor. with no consideration that the judicial system and constitution are being systematically converted to third world standards.

## PRAYER FOR RELIEF

Christopher Alan Lawrence humbly prays this Honorable Court will grant this Petition for Discretionary Review and set it for submission to sort out the legal issues raised by this case that have been forfeited through ineffective counsel at trial and on appeal by attorneys hired by the state to protect the interest of the state. Ultimately Lawrence prays the Court will grant him a new trial where he can "intelligently" defend himself against the false charges.

CHRISTOPHER ALAN LAWRENCE
TDCJ # 1923479
WILLIAM G. MCCONNELL UNIT
3001 S. EMILY DR
BEEVILLE, TX 78102

## CERTIFICATE OF SERVICE

The undersigned Appellant/Petitioner hereby certifies that a true and correct copy of the foregoing Petition for Discretionary Review has been mailed, by U.S. Mail, postage prepaid, to the District Attorney, Appellate Division, Comal County Courthouse Annex, 150 S. Seguin Avenue Suite 307, New Braunfels, Texas 78130, and to the State Prosecuting Attorney, P.O.Box ~~12405~~ 13046, Austin, Texas 78711. On this 6th day of November , 2015.

CHRISTOPHER ALAN LAWRENCE
TDCJ# 1923479

10.

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00192-CR

**Christopher Lawrence, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
NO. CR2013-543, HONORABLE JACK H. ROBISON, JUDGE PRESIDING**

---

## MEMORANDUM OPINION

Christopher Lawrence was charged with two counts of aggravated sexual assault of K.H., who was younger than six years old at the time of the offenses.[1] *See* Tex. Penal Code § 22.021(a)(1)(B)(i), (iii) (setting out elements of offenses at issue), (a)(2)(B) (specifying that offense is aggravated sexual assault if victim is younger than 14 years old). The first count alleged that Lawrence penetrated K.H.'s anus with his sexual organ or caused K.H.'s anus to contact his sexual organ, and the other count alleged that Lawrence penetrated K.H.'s sexual organ with his fingers. *See id.* § 22.021(a)(1)(B)(i), (iii). During the trial, the district court admitted evidence regarding child pornography that was discovered on Lawrence's computers. At the end of the trial,

---

[1] The indictment also alleged an additional count of aggravated sexual assault as well as a charge for continuous sexual abuse. Before the case was submitted to the jury, the State elected not to proceed with the continuous-sexual-abuse charge, and at the end of the guilt or innocence phase of the trial, the jury determined that Lawrence was not guilty of the additional aggravated-sexual-assault charge.

the jury found Lawrence guilty of both counts and sentenced him to 30 years' imprisonment for the first count and to 70 years' imprisonment for the second count. *See id.* § 22.021(e) (stating that offense is first-degree felony), (f) (providing that minimum sentence is 25 years if victim is younger than six years old). The district court determined that those punishments would run concurrently. On appeal, Lawrence contends that the district court abused its discretion by admitting into evidence the information and files recovered from his computers. We will affirm the district court's judgment of conviction.

## DISCUSSION

### Evidence of Child Pornography

In a single issue on appeal, Lawrence contends that the district court erred by admitting into evidence "video, photographic and documentary evidence depicting child pornography." Specifically, Lawrence notes that during the trial the State introduced images and videos of child pornography that were recovered from his computers as well as a list of internet searches that were performed on his computers and that contained graphic sexual terminology regarding children. When challenging the district court's ruling, Lawrence contends that the evidence of those extraneous offenses was impermissibly admitted as character evidence contrary to the directives of Rule of Evidence 404(b). *See* Tex. R. Evid. 404(b). Moreover, although Lawrence acknowledges that the Rule does allow for the admission of extraneous offenses for limited purposes such as establishing identity, lack of accident, absence of mistake, intent, motive, or a lack of opportunity or impossibility, *see id.* R. 404(b)(2) (setting out permissible uses for extraneous offenses); *see Sandoval v. State,*

2

409 S.W.3d 259, 299 (Tex. App.—Austin 2013, no pet.) (explaining that "[e]vidence of an extraneous offense may be admissible under Rule 404(b) to rebut" defense of lack of opportunity or impossibility), Lawrence contends that none of those exceptions to the general rule applied. Specifically, he asserts that "the evidence was not admissible to rebut a defensive theory of lack of intent since [he] denied that the offense occurred at all." Furthermore, Lawrence contends that the evidence was not "admissible to show motive because motive is not a required element of the offense." Finally, Lawrence contends that the evidence was not admissible to establish his identity because his identity as the alleged perpetrator "was never in question" and that it was not admissible to rebut a defense "of lack of opportunity or impossibility" or of "mistake or accident" because "[n]o such claim[s] w[ere] made in this case."[2]

---

[2] In the fact portion of his brief, Lawrence notes that during a hearing held before the trial started, the State indicated that it intended to discuss during its opening statement a video that was recovered from Lawrence's computers depicting a child performing oral sex on an adult man. When discussing its reasons for why the State would be allowed to discuss the video, the district court stated that the video was alleged to have been part of the res gestae of the offense because Lawrence "showed pornography to the child on the -- on a computer and then -- that showed a child performing fellatio on a male and then asked her to do it." See Prible v. State, 175 S.W.3d 724, 731-32 (Tex. Crim. App. 2005) (providing that evidence of extraneous offenses may be admitted as same-transaction contextual evidence if crimes are intermixed, blended with one another, or connected in manner that they form indivisible transaction). However, Lawrence asserts that during the trial, K.H. denied in her testimony that Lawrence showed her the video on his computer and then asked her to perform the act. Accordingly, Lawrence contends that the "State's justification for offering this evidence was not supported by the complainant herself."

Having reviewed the record, it is not entirely clear that K.H. did in fact deny that Lawrence asked her to reenact something after showing her a video. In her testimony, K.H. testified that Lawrence inserted his fingers into her vagina and "put his private in my bottom." Moreover, in response to a question by the State regarding whether Lawrence did other sexual acts, K.H. explained that Lawrence "tried to put his private in my mouth." Furthermore, when asked if Lawrence showed her any pictures or videos where people did not have any clothes on, she answered, "kind of," but explained that she could not "remember what the videos were." Right after answering that last

3

As a preliminary matter, we note that it is not entirely clear that Lawrence preserved this issue for appeal. Before the trial started, Lawrence filed a motion in limine asking that all evidence of extraneous offenses be excluded until a hearing is held to determine the admissibility of the evidence. In the motion, Lawrence referenced Rules of Evidence 403, 404, 608, and 609. During the hearing on the motion, Lawrence argued that the evidence was "designed to inflame the jury, to impassion them on an extraneous offense. And, therefore, it's far more prejudicial than probative." After hearing this argument, the district court overruled the objection and stated that it found the evidence "far more probative than prejudicial." On the following day, Lawrence expressed concern regarding the admission of information from one of his computers. Specifically, Lawrence mentioned that one of his computers was purchased from a pawn shop and that he wanted to be certain that any information regarding internet searches or downloads pertained to activities occurring after the purchase date, but the district court explained that it did not have enough information about the evidence at that point to make a ruling but encouraged Lawrence to lodge an objection if needed later. During the trial, Detective Brian Morgan testified about the forensic analysis that was performed on the computers, and exhibits relevant to the analysis were admitted. After questioning Officer Morgan on voir dire, Lawrence explained that he was "renewing my . . .

---

question, the State asked, "Was the stuff that he was wanting you to do that you're talking about with your mouth," and she answered, "No."

In any event, other than mentioning these exchanges in the fact section of his brief, Lawrence does not address this topic further. Moreover, given our ultimate resolution that the district court did not abuse its discretion by admitting the evidence under Rule 404(b) for other purposes, we need not further address this ruling by the district court. *See Gaytan v. State*, 331 S.W.3d 218, 225 (Tex. App.—Austin 2011, pet. ref'd).

4

403 objection that we discussed earlier . . . [t]hat this is far more prejudicial than probative," and the district court overruled the objection. In his testimony, Officer Morgan extensively described the images and videos of child pornography as well as the accompanying internet searches that he found on Lawrence's computers, but Lawrence made no objection during the officer's testimony based on Rule 404, did not make any further objections regarding Rule 403, and did not request a running objection under either Rule. Moreover, when Lawrence later testified himself, he admitted that he had downloaded some of the child-pornography files.

Although Lawrence's motion in limine sought to prevent the admission of evidence under Rule 404(b) among other Rules, "motions in limine do not preserve error," *see Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007), regardless of whether they are "granted or denied," *see Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet. ref'd). Accordingly, a party must object to the actual admission of the evidence in order preserve the error for appeal. *Id.* As set out above, when the evidence was offered, Lawrence only objected on Rule 403 grounds. *See Roberson v. State*, No. 02-08-00152-CR, 2010 Tex. App. LEXIS 6421, at *10 (Tex. App.—Fort Worth Aug. 5, 2010, pet. ref'd) (mem. op., not designated for publication) (explaining that objection under Rule 403 at trial did not preserve for appeal complaint that evidence was admitted in violation of Rule 404); *Parmer v. State*, 38 S.W.3d 661, 668 (Tex. App.—Austin 2000, pet. ref'd) (concluding that issue regarding admission of evidence under Rule 404(b) was not preserved because no objection was made but addressing issue concerning same evidence under Rule 403); *see also Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (stating that defendant's appellate contention must comport with specific objection made at trial); *Broxton v.*

5

*State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (noting that objection stating one legal theory may not be used to support different legal theory on appeal). Moreover, as set out above, Lawrence did not object to the testimony of Officer Morgan when the officer was describing the contents of the files and searches that were recovered from the computers, *see Mitchell v. State*, 68 S.W.3d 640, 643 (Tex. Crim. App. 2002) (explaining that if previously objected to evidence is introduced from another source without objection, defendant may not challenge admission on appeal); *Luu v. State*, 440 S.W.3d 123, 127 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (providing that party must object every time inadmissible evidence is offered or request running objection and that any error in admission of evidence is cured when evidence comes in without objection), and Lawrence himself later admitted that he downloaded some of the files to his computers.

In any event, as Lawrence correctly points out, Rule of Evidence 404 generally prohibits the admission of "other crime[s], wrong[s], or other act[s] . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but the Rule does allow that type of evidence to be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b); *see Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (explaining that "evidence may be admissible when it has relevance apart from character conformity").[3]

---

[3] For sexual-abuse cases involving minors, article 38.37 of the Code of Criminal Procedure provides that "[n]otwithstanding" Rule of Evidence 404, "evidence that the defendant has committed a separate" sexual offense pertaining to children, including the possession or promotion of child pornography, "may be admitted in the trial" of a defendant accused of aggravated sexual assault of a child "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." Tex. Code Crim. Proc. art. 38.37, § 2. By its terms, article 38.37 "supercedes in certain sexual abuse cases the application of"

On appeal, courts review a trial court's ruling regarding the admission of evidence under an abuse-of-discretion standard. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). "A trial court abuses its discretion when its ruling is arbitrary or unreasonable." *Gaytan v. State*, 331 S.W.3d 218, 223 (Tex. App.—Austin 2011, pet. ref'd). But a trial court does not abuse its discretion if its ruling lies within "the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008). "A trial court's 404(b) ruling admitting evidence is generally within this zone if there is evidence supporting that an extraneous transaction is relevant to a material, non-propensity issue." *Devoe*, 354 S.W.3d at 469; *see Rankin v. State*, 974 S.W.2d 707, 719 (Tex. Crim. App. 1998) (op. on reh'g) (stating that extraneous-offense evidence will generally be relevant but purpose for which it is offered might not be); *see also* Tex. R. Evid. 401 (providing that evidence is relevant if it tends to make fact of consequence "more or less probable than it would be without the evidence"). "If the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed." *Devoe*, 354 S.W.3d at 469.

---

Rule of Evidence 404(b). *See Hitt v. State*, 53 S.W.3d 697, 704-05 (Tex. App.—Austin 2001, pet. ref'd) (discussing prior version of statute). Accordingly, the evidence at issue in this case would seem to have been admissible under article 38.37.

However, before this type of evidence may be admitted under article 38.37, the provision requires that the State "give the defendant notice of the state's intent to introduce" the evidence in its case in chief "not later than the 30th day before the date of the defendant's trial" and that the trial court "conduct a hearing out of the presence of the jury" for the purpose of determining whether "the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt." Tex. Code Crim. Proc. art. 38.37, §§ 2-a, 3. Although the record in this case reveals that Lawrence requested notice of the State's intent to introduce evidence under article 38.37, the record does not show that the State provided notice that it intended to introduce the evidence at issue under article 38.37 or that a hearing was held before the evidence was admitted. For these reasons, we limit our discussion to whether this evidence was admissible under Rule 404.

As set out above, Lawrence was charged with two counts of aggravated sexual assault. The Penal Code specifies that an individual commits that offense if he "*intentionally or knowingly* . . . causes the penetration of the anus or sexual organ of a child by any means" or "causes the anus of a child to contact the . . . sexual organ of another person" and if "the victim is younger than 14 years of age." Tex. Penal Code § 22.021(a)(1)(B)(i), (iii), (a)(2)(B) (emphasis added). Moreover, although not listed specifically, "'[i]ntent to arouse or gratify sexual desire' is an implicit element of aggravated sexual assault of a child." *Sarabia v. State*, 227 S.W.3d 320, 323-24 (Tex. App.—Fort Worth 2007, pet. ref'd) (citing *Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998)); *see also Ochoa*, 982 S.W.2d at 908 (explaining that "Legislature did not intend that the 'intent to arouse and gratify' requirement" found in other statutes regarding sexual crimes "be excluded from proof of the elements of aggravated sexual assault"). Accordingly, the evidence establishing that the computers had been used to search for and download images and videos of underage girls having sex was "admissible under rule 404(b) because [it] tend[ed] to show Appellant's intent or motive to arouse or gratify his sexual desire via" underage girls. *See Sarabia*, 227 S.W.3d at 324.

Moreover, during the trial, evidence was introduced through a recording of an interview of Lawrence by the police, through the cross-examination of one of the State's witnesses, through the testimony of witnesses called on behalf of Lawrence, and through Lawrence's testimony that any inappropriate touching that occurred was unintentional or accidental, occurred while he was sleeping, or was caused by K.H. *See Abshire v. State*, 62 S.W.3d 857, 860 (Tex. App.—Texarkana 2001, pet. ref'd) (explaining that evidence of extraneous offenses may be used to establish "elemental

8

fact" such as intent, to establish evidentiary fact like motive, or to rebut defensive theories like absence of mistake or accident).

Prior to the trial, Lawrence was interviewed by Detective David Schroeder. A copy of that interview was played for the jury during Officer Schroeder's testimony. In the interview, Lawrence repeatedly asserted that he did not touch K.H. in any manner but also repeatedly stated that if he did touch K.H., he did so unintentionally or when he was asleep. Specifically, he stated, "If I touched her, I did not do it when I was awake. I cannot account for when I was asleep. I may have. . . . I was asleep that night." Moreover, Lawrence explained that one time he woke up and realized that his hands were on K.H.'s leg and that he was "afraid of what I did when I was asleep. Okay. I don't know what I do in my sleep, and I'm scared shitless of it." Furthermore, Lawrence recalled that "there is a good chance that it happened" while he was asleep but that "I know I did not touch her in an intentional setting. I [did] not intentionally touch[] her." More specifically near the end of the interview and when describing one incident, Lawrence stated as follows:

> We were laying there. I was laying there, at first. And then [K.H.], all jumpy, was like, "I want to lay down." So, she came over and she was like, "Can I lay down with you?" I was like, "sure." So, I let her under the covers, and I let her lay there. I started to doze off, and I kind of pulled her closer to me, you know, because you know contact kind of feels nice. . . . I'm a cuddler. . . . And we were laying there. And I was half dozed off, and I thought she grabbed my hand to pull me closer. And the next thing I know, my hands were underneath her pants. And then when my reaction hit, my finger was on top . . . you know how a woman's or a female's vagina is where it is at the very top. When I realized my hand was there, I yanked it back.

When Lawrence cross-examined Officer Schroeder about the interview, the following exchange occurred:

9

Q: In this case about the touching, [Lawrence] says over and over again that what he did was unintentional. Right?

A: Subconsciously, he didn't mean to do it.

. . .

Q: So does it make no difference that she pulled his hand while he was asleep?

A: I don't believe that happened. I think he minimized it.

After the state rested its case, Lawrence called his stepfather, Jeff Lewallen, to the stand to discuss what he saw on the day in question. Specifically, Lewallen testified Lawrence was asleep on the couch and that K.H. "kept trying to get up there to lay with him. And he kept telling her that, no, he wanted to lay by himself. And he finally dozed off by himself." Moreover, Lewallen explained that K.H.'s mother placed K.H. beside Lawrence on the couch and then covered them up with a blanket. Next, Lewallen stated that he saw Lawrence "get up, telling [K.H.], We don't do things like that around here" and that Lawrence pushed K.H. away. After Lewallen finished testifying, his wife and Lawrence's mother, Shirley Lewallen, was called to the stand to testify regarding her recollections of the day in question. In her testimony, she said that Lawrence was asleep on the sofa, that K.H. wanted to lay down beside him, that K.H.'s mother covered K.H. with a blanket, that K.H.'s mother grabbed Lawrence's arm and placed it near K.H.'s waist, and that Lawrence later stood up and stated that "[w]e do not do these things in this house" and that "[t]hey're not allowed."[4]

---

[4] In his testimony, Lewallen also explained that he believed that K.H.'s significantly older brother was sexually abusing her based on interactions that he observed and based on a statement that K.H. made to him about how her brother had been very rough when he bathed her and caused

10

During his own testimony, Lawrence stated that any inappropriate touching was unintentional, was caused by K.H., or happened while he was asleep. Specifically, Lawrence testified as follows when asked why K.H. was with him on the sofa:

Q: How did K.H. come to be on that sofa with you?

A: I'm not too certain.
　　But she always liked laying on the couch, especially when somebody was laying on it with her. I would cuddle with her, and [her mother] was okay with it.
　　But that night, I don't know. I fell asleep and -- I mean, I didn't want her on the couch because she asked. I told -- I told them no, and I fell asleep.
　　And then I woke up with her bumping me, and I don't -- she was doing something weird, and I didn't like it, so I pushed -- well, I didn't push her, but I told her to get off the couch and, you know, go play or go somewhere else.

Q: Why did you tell her to get off the couch?

A: I think she was pulling my hand over her. I wasn't sure what it was for. I felt -- I felt the ridge of her pants, so that's what woke me up. That, and the -- she kicked me on the shin; not hard, but just, like, squirming.

Q: Did you ever intend to touch her at all?

A: No.

Q: Now, you heard your testimony to Detective Schroeder. Right?

A: Yes.

Q: Did you touch her private area?

---

her genitals to bleed. Similarly, Shirley also testified that she was concerned that K.H.'s older brother was sexually abusing her because the two of them slept in the same bed at night, because he bathed her behind closed doors, and because K.H. told her that her brother scrubbed her so hard that her bottom started bleeding.

11

A: I'm not too sure if I did or not, to be honest.[5]

Finally, during his closing argument, Lawrence stated as follows:

A very important part of the statute is the state of mind of the accused in this case, [Lawrence]. They're asking you to find that [Lawrence] intentionally or knowingly did this.

And I think if you review the evidence and the witnesses, you'll see that wasn't there. A lot of time was spent when we watched [the interview]. It was a long one. [Lawrence] said, "I did touch her. My hand touched the top, but I didn't mean to. As soon as I woke up, as soon as I felt it, I pushed her off." He admitted to the touching, but he didn't do it on purpose.

In light of the preceding, we cannot conclude that the district court abused its discretion by allowing in evidence regarding images and videos of child pornography as well as internet searches for child pornography that were found on Lawrence's computers because that evidence tended to prove Lawrence's intent to commit the offenses charged and to disprove, among other things, the defensive theories that any touching was caused by K.H., occurred while Lawrence was asleep or otherwise unaware, and was done inadvertently or by accident. Accordingly, we overrule Lawrence's issue on appeal.

---

[5] During the interview with the police, in his testimony, and during his closing argument, Lawrence also explained that he believed that K.H.'s mother had coached her to make the allegations against him because he had been involved in a sexual relationship with K.H.'s mother that had ended. Moreover, in the interview to the police, in his opening and closing statements, and through his questioning of the State's witnesses and his own witnesses, Lawrence also suggested that it was highly unlikely that any abuse could have occurred because the home was too small to hide any improper activity and because there were other individuals in the room during the alleged incidents.

12

Christopher Alan Lawrence
TDCJ # 1934479
William G. McConnell Unit
3001 S. Emily Dr.
Beeville, Texas 78102

-LEGAL-

Abel Acosta
Court of Criminal Appeals Clerk
Court of Criminal Appeals Of Texas
P.O. Box 12308, Capitol Station
Austin, Texas 78711